## Birge-Forbes Company v. St. Louis & San Francisco Railroad Company.

### Decided December 19, 1908.

**1.—Principal and Agent—Implied Authority of Agent—Evidence.**

Every delegation of power, unless expressly limited by some instrument, carries with it as an incident the authority to do whatever is reasonably necessary and proper to effectuate the purpose for which it was created. Third persons in dealing with such an agent have the right to conclude that the principal intended that he should have and exercise those powers which properly and legitimately belong to the character in which he holds him out, and the principal will not be heard·to say that he did not intend to confer so much authority.

**2.—Same—Case Stated.**

A private corporation, domiciled in Texas, was engaged in the business of buying cotton; for this purpose it had an agent stationed in the Indian Territory; the agent had charge of the business at that place; he had no instructions to store the cotton bought by him for his principal, but his instructions were to ship such cotton as often and rapidly as he could; of these instructions the railroad agent had no knowledge; the agent asked permission of the railroad agent at the place where he was engaged in buying cotton, to store a number of bales on the railroad platform until he was ready to ship, to save the extra expense of handling them; the railroad agent told him that if he put the cotton there it would be at his own risk. In an action by the principal against the railroad company for the value of the cotton destroyed by fire while on the platform, the foregoing facts and other evidence considered, and held, that the principal was bound by the agreement made by its agent with the railroad agent as to the risk, and that said facts raised a conclusive presumption as to the power of the cotton agent to make such agreement.

**3.—Evidence—Deposition—Right to Entire Answer.**

When a party introduces in evidence a part of the answer of a witness testifying by deposition, the other party is entitled to introduce the remainder of the answer relating to the same subject.

**4.—Conflicting Evidence—Corroboration.**

In an action against a railroad company for the value of cotton destroyed by fire while on the railroad platform, the testimony was conflicting as to whether or not there was an agreement that if placed on the platform it would be at the owner's risk. The plaintiff introduced in evidence a part of the

answer of its witness, taken by deposition, as follows: "Nothing whatever was ever said between me and any agent of the defendant about storing cotton on said platform at the plaintiff's risk as to fire." For the purpose of corroborating its witness, who had testified that there was such an agreement, the defendant was entitled to introduce the remainder of said answer, as follows: "The only conversation that I ever had with any agent of the defendant about loss by fire on any cotton on said platform was with defendant's agent, and that was one afternoon on the cotton platform about the middle of the cotton season. Something was said by him as to who would stand loss on cotton in case of fire; and I said, 'I suppose the owner would look to the insurance company for their loss.'"

**5.—Practice—Charge—No Issue.**

The trial court should not give a charge submitting an issue not raised by the pleading and evidence.

**6.—Appeal—Brief—Practice.**

An assignment of error not a proposition in itself nor followed by a proposition and a statement of the evidence pertaining thereto in appellant's brief, will not be considered on appeal.

**7.—Charge—Proximate Cause—Assumption of Fact.**

When it appears from the undisputed evidence that certain facts constitute contributory negligence and that such negligence was the proximate cause of the injury, it is not error for the trial court to assume in its charge that said negligence was the proximate cause of the injury.

Appeal from the District Court of Grayson County. Tried below before Hon. B. L. Jones.

*J. F. Holt* and *Wilkins & Vinson,* for appellant.—There was no testimony to show or tending to show that the agent, A. C. Peck, had any authority to make the contract to store plaintiff's cotton on the defendant's platform or elsewhere at plaintiff's risk, or that plaintiff had ever held him out as having such authority. It was defendant's duty to ascertain his authority. It was shown to be the duty of said Peck to buy and ship cotton, and not to store it until the market suited him, Peck, to ship it. The proof showed that at the time, and if he made such agreement, he was not acting for plaintiff, but for himself. Galveston, H. & S. A. v. Allen, 94 S. W., 417; Wills v. I. & G. N., 92 S. W., 273; Baker v. Kellet, etc., Co., 84 S. W., 661; Missouri, K. & T. Ry. v. Faulkner, 88 Texas, 649; Malony, etc., Co. v. Dublin Co., 107 S. W., 904; Texas B. & L. Assn. v. Norwood, 46 S. W., 404, 405; Galveston, H. & S. A. Ry. v. Donahoe, 56 Texas, 165; Missouri, K. & T. Ry. v. Warner, 49 S. W., 256.

The court erred in admitting the testimony of the witness, A. C. Peck. The statement shows on its face to be a conclusion of the witness, is an opinion and hearsay. It was not made in pursuance with any duties imposed by his employment nor while acting for plaintiff. It is hearsay, no part of the res gestae, and not about a matter then pending. It was not shown that he had any authority to make such a statement on behalf of plaintiff, and is irrelevant and immaterial. Waggoner v. Snody (Texas Sup.), 85 S. W., 1135; City of Austin v. Forbis (Texas Sup.), 89 S. W., 406; Missouri Pacific v. Sherwood, 84 Texas, 125; 1 Clark & Skyles on Agency, sec. 468, p. 1029.

The court erred in paragraph seven of the charge to the jury

reading as follows: "Again, upon the issues submitted to you in paragraph six of this charge, you are instructed if you believe from the evidence that the said A. C. Peck was himself guilty of negligence, that is, did himself an act that an ordinarily prudent person under the same or similar circumstances would not have done, when he placed said cotton on said platform, you will find for the defendant on the issues submitted to you in said paragraph six." Eads v. City of Marshall, 29 S. W., 171; St. Louis & S. W. Ry. v. McClain, 80 Texas, 85; Gonzales v. City of Galveston (Texas Sup.), 19 S. W., 285; Gulf, C. & S. F. Ry. v. Hodge, 39 S. W., 968.

*C. H. Yoakum* and *Head, Dillard & Head,* for appellee.

TALBOT, ASSOCIATE JUSTICE.—This suit was instituted by the appellant against the appellee to recover $1888, the alleged value of thirty bales of cotton charged to have been destroyed by fire through the negligence of appellee's agents and servants, while the same were situated on a platform owned by appellee in Francis, Indian Territory. The defendant's answer was a general denial, contributory negligence and assumed risk. A jury trial resulted in a verdict and judgment for the defendant, from which this appeal is prosecuted.

It was shown that during the years 1905 and 1906 the appellee maintained immediately adjacent to its railroad tracks in Francis a platform used for the purpose of loading cotton and other freight onto its cars for immediate transportation. It was not customary to store freight upon the platform for shipment at some indefinite time in the future. During the cotton year 1905-1906 appellant, a private corporation domiciled in this State, was engaged in buying and shipping cotton and was represented at Francis, Indian Territory, in the conduct of its business, by its agent, A. C. Peck. In the month of January, 1906, Peck informed appellee's agent at Francis that he had some Birge-Forbes cotton he did not desire to move right away and would like to put it on the platform to save the extra expense of moving and handling the same. To this request appellee's agent replied and stated to Peck that it was not customary to permit such a thing as that, and that if he (Peck) put the cotton there he would do so at his own risk of fire. With this understanding appellant's agent placed the cotton upon the platform, leaving it wholly unprotected from fire by covering of any kind or in any way except the bagging in which it was wrapped, and on the night of January 16, 1906, between twelve and one o'clock, it was set on fire by sparks emitted from a passing engine of appellee and destroyed.

The first assignment of error complains of the admission of the testimony of appellee's agent, Young, to the effect that appellant's agent, Peck, asked permission to store the cotton destroyed on appellee's platform to save the extra expense of handling it, as he did not desire to ship right away, and that Young told him that it was not customary to do that, and if he, Peck, put the cotton there he would do so at his own risk. The objection urged to the testimony in the lower court by appellant and the one pressed here is that there was no testimony tending to show that its agent Peck had any authority

to make an agreement or contract on behalf of appellant to store its cotton on appellee's platform or elsewhere at appellant's risk of fire, or that appellant had ever held him out as having such authority. The evidence does not show that express authority was conferred upon Peck by appellant to store the cotton burned upon the platform in question at appellant's risk of fire, and if such authority can not be implied from the nature of the agency or acts done by the agent Peck at the direction, or with the acquiescence of appellant, then it can not be said that such authority existed.

Peck testified that he resided at Francis, and bought cotton for Birge-Forbes Company during the cotton year of 1905-1906; that he had no instructions whatever to store any cotton for plaintiff and never stored any for plaintiff; that nothing was ever said or written between him and plaintiff on that subject; that his instructions were to "ship and to ship as often and rapidly as he could;" that he put the cotton on the platform to be shipped to Ada to be compressed. Being asked if plaintiff was benefited in any way by having his cotton stored on said platform while awaiting shipment instead of using his own cotton yard therefor, he answered: "Not in the least." He further stated: "I bought, paid for and shipped all cotton to them (plaintiffs) according to their direction. I had it placed on the platform. I had control of the shipping of it. That is about all I had to do with it. Many times I have seen sparks fly from passing engines and have seen the cotton platform almost black with cinders. This condition existed about the time of the fire. I have seen cinders probably as large as small buckshot on and about said platform, which came from defendant's passing engines about the time stated. I have probably had cotton catch fire on this platform a dozen times. Some of it had just been put there, and some of it had been there as long as two weeks or ten days. Yes, I knew it was dangerous before the fire. All cotton platforms as the railroads expose them are always dangerous. There was a cotton yard at Francis, which belongs to J. D. Peck & Bro. (my firm), and is located near the cotton platform. It was used for the purpose of storing cotton not intended for immediate shipment." It was shown that no bill of lading had been issued for this cotton, and the cotton which Peck had previously put on the platform was placed under bill of lading immediately thereafter.

We are of the opinion that appellant should be held bound by the agreement made by its agent Peck with appellee's agent Young to the effect that if the cotton was stored on the platform it should be done at appellant's risk of fire. The appellant was a private corporation residing in Texas. It could only carry on the business of buying and shipping cotton at Francis, Indian Territory, through an agent; and any agent empowered to act for it in respect to the conduct of that particular business was the representative of the company in that behalf, and his acts done within the scope of the power conferred upon him or within scope of his apparent authority was binding upon the company. Such act was in legal effect the act of the principal.

Again, every delegation of power, unless expressly limited by some

instrument, carries with it, as an incident, the authority to do whatever is reasonably necessary and proper to effectuate the purpose for which it was created. (Mech. on Agency, secs. 280 and 311.) Third persons in dealing with such an agent have the right to conclude that the principal intended that he should have and exercise those powers which properly and legitimately belong to the character in which he holds him out. Having by the creation of the agency bestowed upon the agent a certain character, the principal will not be heard to assert, as against third persons who have relied thereon in good faith, that he did not intend to impose so much authority. (Mech. on Agency, sec. 278.) An application of the doctrine was made in the case of Ryan & Co. v. Missouri, K. & T. Ry. Co., 65 Texas, 13. In that case it is held that the owner of property, who intrusts its delivery by a third person to a carrier for shipment, must be regarded as having conferred upon such person authority to stipulate for the terms of transportation; that having the power to make the delivery, he will be presumed to have all the power necessary to carry it into effect, and that the carrier is authorized to act upon such presumption in contracting with the agent and need not inquire into the authority to make the particular shipment. See also Missouri Pac. Ry. v. International M. Ins. Co., 84 Texas, 149.

The principles announced are clearly applicable, it would seem, to the case at bar. There was no proof of any express limitation of Peck's authority in writing, or that appellee or its agent Young knew that he had been instructed to ship the cotton bought at Francis "as often and rapidly as he could;" and while he had not, previous to the transaction under consideration, stored any cotton purchased by him for appellant upon appellee's platform at appellant's risk of fire, yet the necessity of storing such cotton by Peck for some period of time before shipment, and at appellant's risk, was reasonably and naturally to be presumed; and Peck's authority to so store it could reasonably be inferred from the power conferred upon him to buy and ship. This presumption and inference would obtain, notwithstanding the fact that other cotton had not been so stored. That the necessity for storing some of the cotton might arise and that, as an incident to the main power conferred upon Peck, he had the discretion to store it and at appellant's risk, is fairly and legitimately deducible from the facts, and appellant can not therefore escape the consequences of Peck's act in storing its cotton on appellee's platform at appellant's risk, even though such act was in excess of his actual authority. We further conclude that the power of Peck to make the arrangement to store the cotton destroyed on appellee's platform was a conclusive presumption from the undisputed facts, and that the court did not err in refusing to submit the question to the jury as a controverted issue.

Appellant's third assignment complains of the admission in evidence, over its objection, of the following portion of A. C. Peck's deposition: "The only conversation that I ever had with any agent of defendant about loss by fire on any cotton on said platform was with Mr. Young, and that was one afternoon on the cotton platform about the middle of the cotton season of 1905-6. Something was

said by him as to who would stand loss on cotton in case of loss by fire, and I said: 'I suppose Birge-Forbes people would look to the insurance company for their loss.' That was all I said about it, or the substance of all I said about it. I had been using that platform in exactly the same way ever since it had been built, in the year 1901." This testimony was objected to on several grounds, but none of them warranted its exclusion. It was the remainder of an answer made by Peck to the third interrogatory propounded to him, of which appellant had introduced a part. The part offered by appellant was as follows: "Nothing whatever was ever said between me and any agent of the defendant about storing cotton on said platform at the plaintiff's risk as to fire." Then followed in that immediate connection the balance of the answer complained of and as above set out.

The evidence was conflicting upon the issue as to whether or not there was an agreement between appellee's agent Young and appellant's agent Peck to the effect that the cotton stored on the platform and burned, was to be at appellant's risk of fire. Young testified that such an agreement had been made, and appellant having introduced that part of Peck's answer to the third interrogatory wherein he stated that "nothing whatever was ever said between me and any agent of the defendant about storing cotton on said platform at the plaintiff's risk as to fire," the remainder of that answer offered by appellee, which contains an admission by Peck that he did have a conversation with Young relative to who would stand the loss on the cotton in case of fire, and that he, Peck, supposed appellant would look to the insurance company for their loss, was admissible as corroborating appellee's witness Young, and as tending to contradict the general statement of appellant's agent Peck to the effect that "nothing *whatever* was ever said" between him and Young about storing the cotton at appellant's risk of fire. Besides, appellant having introduced a part of the witness' answer, appellee was entitled to have the balance of it relating to the same subject go to the jury.

There was no error in refusing appellant's special charge, the refusal of which is made the basis of the fourth assignment of error. The complete answer to this assignment is that neither the pleadings nor the evidence raised the issue as to whether the agent Peck was acting for himself or for the appellant. In this state of the record the giving of the charge submitting such an issue would have been misleading, and it was therefore properly refused.

Nor do we think the court erred in refusing appellant's special charge to the effect that if the cotton was placed on the platform and accepted by the defendant only for the purpose of storing the same until it suited plaintiff to have said cotton shipped, then the liability of the defendant was that of a warehouseman, and it was its duty to exercise that degree of care to protect the cotton that a person of ordinary prudence would exercise in taking care of his own property, and if appellee failed to exercise such care and by reason thereof the cotton was destroyed, to find for plaintiff. In so far as necessary the question presented by this instruction was covered by the court's main charge. If appellant desired, as is said by appellee, to have

the specific question of negligence *vel non* on the part of appellee in failing to provide water or other means for extinguishing the fire, it should have prepared and requested a correct special charge in reference thereto, and assigned error to its refusal, if not given.

Appellant's sixth assignment will not be considered. It is not a proposition in itself within the meaning of the rules relating to the preparation of briefs, and is not accompanied by either a separate proposition or statement of the evidence showing its applicability.

Complaint is made of the following charge of the court: "Again, upon the issues submitted to you in paragraph six of this charge, you are instructed if you believe from the evidence that the said A. C. Peck was himself guilty of negligence; that is, did himself an act that an ordinarily prudent person under the same or similar circumstances would not have done, when he placed said cotton on said platform, you will find for the defendant on the issues submitted to you in said paragraph six." We do not believe the court erred in giving this charge. The undisputed evidence is that the cotton was placed upon appellee's loading platform immediately adjacent to appellee's railroad track by appellant's agent Peck, and that so situated it was in great danger of being set on fire by sparks from passing engines, all of which Peck well knew. Indeed, the evidence to our minds conclusively establishes that cotton so situated would in all probability be set on fire by passing engines. If, therefore, the act of Peck in placing the cotton on the platform was a negligent act, that is, an act that a person of ordinary prudence would not have done under the same or similar circumstances, and the verdict of the jury embraces a finding that it was, then such negligence did, under the undisputed evidence, proximately contribute in causing the destruction of the cotton by fire, and whether such negligence did so contribute was not an issuable fact and should not have been submitted to the jury as such. (Gulf, C. & S. F. Ry. Co. v. Rowland, 90 Texas, 365; Texas & Pac. Ry. v. McCoy, 90 Texas, 264; Dallas Con. Elec. St. Ry. Co. v. McAllister, 90 S. W., 933; Morgan v. Missouri, K. & T. Ry. Co., 110 S. W., 978.) The pleadings were amply sufficient to authorize the giving of this charge.

Finding no error in the record the judgment is affirmed.

*Affirmed.*

BOOKHOUT, ASSOCIATE JUSTICE, dissenting.—I regret that I am compelled to dissent from the views of the majority of the court in this case. I will merely state the grounds of dissent without discussing the same.

Defendant's plea of contributory negligence reads as follows: "Further, defendant says if said cotton was destroyed by fire such destruction was proximately caused, contributed to and brought about by the wrong, negligence and want of care of plaintiff and the owners of said cotton at the time of the destruction and those controlling and handling the same for them. That for the accommodation of said persons said cotton was placed in close proximity to defendant's railway tracks, where engines were constantly passing and repassing, and where, with the utmost care, it was impossible to prevent the

escape of sparks and fire. It was needlessly left in such position for the sole accommodation of such persons, and was entirely unprotected by such persons. They might easily have used tarpaulins or other material for covering the same and thus have reduced to a minimum the risk of fire. This they failed to do, failed to have any watchman to look after the cotton, failed to provide water, failed in any way to provide any means for extinguishing a fire that might originate in or near the cotton, or to take any sort of means to protect it."

The court instructed the jury as follows: "Again, upon the issues submitted to you in paragraph six of this charge, you are instructed if you believe from the evidence that the said A. C. Peck was himself guilty of negligence, that is, did himself an act that an ordinarily prudent person under the same or similar circumstances would not have done, when he placed said cotton on said platform, you will find for the defendant on the issues submitted to you in said paragraph six." This charge instructs the jury that if Peck was guilty of negligence in placing the cotton upon the platform they should find for defendant. In my opinion this charge was not authorized by either the pleadings or evidence. The defendant's plea of contributory negligence does not contend that the mere placing of the cotton on the platform in itself constituted contributory negligence, but the placing of the cotton on the platform and the failure to properly protect the same by covering it with tarpaulins and to employ a watchman to look after it, and the failure to provide water to extinguish a fire that might originate at or near the cotton, or take any sort of means to protect it, was negligence which proximately contributed to and did bring about the destruction of the cotton. As I read the answer, it nowhere alleges the mere act of placing the cotton on the platform was negligence. The defendant introduced evidence that the cotton was not covered, except with the bagging used in baling it. It also introduced evidence to show a lack of fire protection at the platform. In view of defendant's pleading and evidence, the charge of the court, in my opinion, was unauthorized. Again, if the pleading and evidence authorized the giving of the charge, the court should have submitted to the jury the issue whether or not the placing of the cotton on the platform proximately contributed to the injury. In my opinion, neither the pleading nor evidence brings this case within the rule announced in the Rowland and McCoy cases cited in the opinion by the majority of the court.

It is to be noted that the authority of Peck was to buy for Birge-Forbes Company cotton to ship, and ship as often and rapidly as he could. The platform upon which the cotton was placed was a shipping and loading platform. Peck was a part owner in a cotton yard at Francis, belonging to J. D. Peck & Bro., located near this platform, which was used for storing cotton not intended for immediate shipment. Peck had never before stored any of Birge-Forbes Company's cotton on this platform. He had no express authority to store their cotton.

Under all the facts and circumstances I am of the opinion Peck

did not have the implied authority to make an agreement for the storing of Birge-Forbes Company's cotton at their risk as to fire.

For the above reasons I dissent from the views announced in the majority opinion.

Writ of error refused.