CHICAGO, R. I. & P. RY. CO. et al. v. S. MARSHALL BULLEY & SON.

(Court of Civil Appeals of Texas. Texarkana. Oct. 19, 1911. Rehearing Denied Nov. 11, 1911.)

1. CARRIERS (§ 139*)—CARRIAGE OF GOODS— LIABILITY AS WAREHOUSEMAN — GOODS AWAITING TRANSPORTATION.

Where a railroad company allowed shippers of cotton to leave cotton on its station platform until the full lot to be shipped was

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

ready, it was liable, as a warehouseman, under Rev. St. 1895, art. 323, providing that a railroad company shall be liable as a warehouseman for goods stored before the commencement of transportation, for part of a lot of cotton intended for shipment, left overnight on the platform by the shipper, in accordance with the custom, awaiting the rest of the shipment, to be brought the next day.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 139.*]

2. CARRIERS (§ 142*)—CARRIAGE OF GOODS—LIABILITY OF WAREHOUSEMAN—NATURE OF LIABILITY.

A railroad company, liable as a warehouseman for cotton left upon its station platform or yard, is bound to exercise ordinary care for the prevention of fire; and to extinguish any fire which may occur.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 608–622½; Dec. Dig. § 142.*]

3. CARRIERS (§ 146*)—CARRIAGE OF GOODS—ACTIONS—EVIDENCE—SUFFICIENCY.

In an action against a railroad company for the loss of cotton burned upon its cotton platform, evidence of the negligent emission of sparks from a locomotive *held* sufficient to go to the jury.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 146.*]

4. CARRIERS (§ 143*)—CARRIAGE OF GOODS—ACTIONS—CONTRIBUTORY NEGLIGENCE.

A shipper who at the invitation of a railroad company left upon the company's station platform part of a lot of cotton intended for shipment for which the railroad company was liable as a warehouseman, was not guilty of contributory negligence, though the cotton was burned.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 143.*]

5. TRIAL (§ 194*)—INSTRUCTIONS.

In an action against a railroad company for burning of cotton, for which the company was liable as a warehouseman, where there was evidence that boys played around the cotton, and defendant's answer set up that one of them set fire to it, a charge authorizing the jury to determine whether ordinary care would have required the railroad company to employ a watchman to prevent boys from playing in and about the cotton was not a charge upon the weight of evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 439–441, 446–466; Dec. Dig. § 194.*]

Appeal from District Court, Montague County; Clem B. Potter, Judge.

Action by S. Marshall Bulley & Son against the Chicago, Rock Island & Pacific Railway Company and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

Speer & Weldon, N. H. Lassiter, and Robert Harrison, for appellants. Davis & Thomason, for appellees.

LEVY, J. The suit is for damages for the loss of 83 bales of cotton alleged to have been destroyed by fire through the negligence of appellants while in their possession and care. Appellants answered by denial and plea of contributory negligence. In a jury trial judgment was entered in accordance with the verdict. All issues of fact were decided by the jury in favor of appellees' contention, and the findings are supported by the evidence.

The first assignment of error is that "the court erred in rendering judgment upon the verdict of the jury, for the reason that it was contrary to the law, and not supported by the evidence." The verdict was a general one in favor of the plaintiffs against the defendants for the value of the cotton alleged to have been negligently destroyed. No irregularity in the form of the verdict appears. There were pleadings and evidence to support the verdict. The court was required to enter judgment on the verdict. The assignment as presented is overruled.

[1, 2] The second assignment predicates error upon the court giving the following charge: "It was the duty of the defendants to use ordinary care to maintain its cotton platform and yards in a reasonably safe condition for the prevention of fire, and to use ordinary care to so maintain and control its yards for the stopping or arresting of fire if the same should be started." The court defined "ordinary care." The contention for error is that in the circumstances of the case the only duty owing by the appellants toward the cotton in suit was to use ordinary care not to set out fire. The 83 bales of cotton in suit were destroyed by fire while on the platform of appellants awaiting the time of shipment. The evidence is undisputed that appellants had erected a platform adjacent to its track for the purpose of receiving and storing cotton delivered there for transportation. The platform was small, and a great quantity of cotton was shipped from that station, and the ground around the platform and on the right of way was also used for the same purpose. The bales of cotton delivered on the yards and platform for shipment were received there by appellants, and loaded on the cars directly from such place. It was the only place provided for receiving cotton for shipment, and was used only for storing cotton for shipment. The yards and platform had been so used for about seven years. It was the practiced custom, according to the evidence, for shippers, when they intended to make shipment of any particular lot of cotton, to haul the cotton by wagons, and each bale as hauled was placed on the platform, or in the yard if the platform was full, and left there in the company's charge until the full lot to be shipped was completed. It was customary, with appellants' knowledge, to deliver a part of the lot to be shipped on one day and the balance on another day. The shipper was provided by the appellants with a blank bill of lading to be filled out, giving the number of bales and tag numbers as fast as the cotton was delivered in the yards and platform. After the full lot of cotton to be shipped was

placed in the yards or platform, and the blanks in the bill of lading filled out, then the shipper, according to practiced custom, presented the bill of lading to the agent of appellants. The agent then verified the number of bales stated in the bill of lading, and signed same; and the cotton was loaded in cars as fast as circumstances permitted. As to the custom, the agent said: "It was not customary for men to come to me before they put the cotton on the platform. They put it there when they got ready (to ship), and then came to me to sign for it. * * * I went and counted the cotton and signed for it." Appellees intended to ship 86 bales of cotton. They had hauled 83 bales and placed them on the platform, but failed to get a dray that afternoon to haul the other 3 bales. The fire occurred the next day, and before the other 3 bales were placed on the platform. Many other bales of cotton had been delivered in the yards for shipment, and bills of lading had been signed for many of them at the time appellees delivered the 83 bales. The sole and only purpose of appellees' delivering the cotton on the platform was to have it shipped out by the appellants. From the facts it is seen that the appellees delivered to appellants the cotton on the platform solely for the purpose of shipment, and that it was so received by the appellants to be stored there on their platform especially provided for that very purpose until the entire lot was gathered there and shipped out. It is correct, we think, as contended by appellants, that at the time of the fire which destroyed the cotton the appellants had not become related to the cotton as a common carrier, and therefore did not owe the high duty required of a carrier. But article 323, R. S. 1895, provides that a railway company shall be liable as warehousemen are at common law for goods and the care of the same stored in depots or warehouses before the commencement of the trip on which the goods are to be transported. And it is clear, we think, that there was imposed upon appellants in the circumstances the duty towards the cotton in suit required of a depositary or warehouseman. The 83 bales were delivered at the railway company's storing place maintained by it for the purpose, to be shipped out by appellants. The cotton was received on the platform by appellants, to be kept there for transportation until the entire lot should be delivered to them, when the actual trip or transportation of all the lot should commence. Nothing remained for appellees to do but deliver the other three bales next day, and have the agent sign the bill of lading filled out by them, before the transportation in cars would commence. It was in appellants' charge and care. The facts make the case unlike Birge-Forbes Co. v. Ry. Co., 53 Tex. Civ. App. 55, 115 S. W. 333. There the shipper only placed the cotton on the platform "to save the expense of moving and hauling the same," and with the understanding that, if permitted to leave the cotton there, it would be at his own risk of fire. It was not intended to be shipped when loaded there, and was not, as here, stored by the railway company until the commencement of the trip. The responsibility of a warehouseman, as appellants were, was not improperly stated in the charge, and the assignment is overruled. 5 Thompson on Neg. § 6646.

[3] There was sufficient evidence to warrant the submission to the jury of the issue of negligent emission of sparks from the locomotive. Mrs. Smith testified: "I do not know positively what started the fire, but at the time it started an engine on the railroad was moving past the place, and I noticed a large quantity of smoke coming out of it at the time, and it appeared to me to catch from the engine." The witness Young said: "I noticed there were sparks escaping from the locomotive, but could not say they were more than the usual amount of a switch engine." The witness Ray said: "I noticed the locomotive while it was at work. I noticed that sparks were escaping from it in considerable amounts." The charge does not assume that the operators of the engine were negligent. The third assignment is overruled.

[4] The fourth assignment complains of the sixth paragraph of the charge, upon the ground that it failed to instruct that the negligence of permitting combustible material to accumulate on the right of way must have been the proximate cause of the loss. The charge required the jury to find "that the burning of said combustible material caused fire to be communicated to the balance of the cotton." It is further complained that there was error because the charge allowed a recovery for negligence without regard to appellants' plea of contributory negligence. There was no contributory negligence in placing the cotton where appellants, according to the undisputed evidence, invited it to be placed, and as warehousemen undertook to care for it.

[5] The court's charge in the eighth paragraph authorized the jury to determine whether, under the facts of the case, ordinary care would require that appellants employ a watchman to prevent boys from playing in and about the cotton and to take supervision for the preventing and arresting of fire, and whether such failure was negligence. The sixth assignment complains of this as error, upon the ground that it is on the weight of evidence. This ground of negligence was pleaded. The evidence showed that boys played around in the cotton, and defendants' answer was that one of the boys set fire to the cotton. The issue was clearly presented. Ordinary care might require that appellants employ a watchman. The facts of this case are unlike Railway Co. v. Flanary, 50 S. W. 726. There the rail-

way company was held to be only a gratuitous bailee. Here as a warehouseman the appellants were required to exercise diligence to care for the property. The charge was not on the weight of evidence.

We have considered the remaining assignments, and think they should each be overruled.

The judgment was ordered affirmed.