### COONS & BRAINE v. TOME and others.

*(Circuit Court, W. D. Pennsylvania. December 17, 1881.)*

1. CORPORATIONS—DIRECTORS—CREDITORS.

The directors of a corporation stand in confidential relations to its creditors, towards whom they are bound to act with perfect fairness. They are, at least, *quasi* trustees for the creditors; and where the corporation is insolvent, good faith forbids that the directors should use their position to save themselves, or one of their number, at the expense of other creditors.

2. SAME—INSOLVENCY—PREFERENCES.

Where the board of directors of an insolvent corporation confessed a judgment against the corporation in favor of one of their number; who was also the president of the corporation and principal stockholder, with a view of giving him priority of lien over another creditor, who was about to obtain a judgment in a judicial proceeding, *held*, that such preference could not be upheld, but that the two judgments must stand on a footing of equality in respect to the commencement of the lien, and share *pro rata* in the proceeds of the property available for their payment.

3. PAYMENTS—APPLICATION OF.

The law will apply a payment in the way most beneficial to the creditor, and therefore to the debt least secured.

In Equity.

*William A. Stone,* for plaintiffs.

*J. O. Parker,* for defendants.

ACHESON, D. J. The Minnequa Springs Improvement Company, a corporation of the state of Pennsylvania, on the fifteenth of June, 1877, issued its coupon bonds of the denomination of $500 each, amounting to $250,000, payable to bearer on September 1, 1897, with interest payable semi-annually; which bonds were secured by the company's mortgage, of even date, to Benjamin S. Bentley, trustee of the bondholders. The mortgage covers a tract of land in Bradford county, Pennsylvania, containing about 20 acres, upon which are the "Minnequa Springs" and the "Minnequa House."

On January 24, 1878, the whole of these bonds were held and owned by Peter Herdic, who on that day sold them, and also 9,320 shares of the stock of the company, to the defendant Jacob Tome. The evidence establishes that Tome was a *bona fide* purchaser for value of all said bonds. The improvement company acquired, prior to the transactions about to be mentioned, other lands contiguous to the mortgaged premises. On the thirteenth of August, 1878, Coons & Braine, the present complainants, brought suit in the court of common pleas of Bradford county against the said corporation to recover damages sustained by them by the breaking of a dam alleged to have been improperly and negligently constructed by the company. This case was ruled out and tried before arbitrators, who, by their award, filed in court on October 26, 1878, found the sum of $5,875 in favor of the plaintiffs. At this time, and from June 12, 1878, Jacob Tome was a director of the corporation, and its president,— Kelion Packard, and John W. Maynard being the other directors,— any two of whom constituted a quorum of the board.

While the suit of Coons & Braine was pending before the arbitrators, Jacob Tome, on October 18, 1878, instituted an action in this court against the corporation to recover his interest on said bonds, then past due and unpaid, and also some money he had advanced to the company. On the twenty-second of October, 1878, during an adjournment of the arbitration, the board of directors of the corporation met in special session,—the three directors, Tome, Packard, and Maynard, being present,—and passed a resolution authorizing and directing the solicitor of the company to confess a judgment in favor

of Tome and against the corporation for the amount of his claim sued for; and, accordingly, the next day, October 23, 1878, such judgment was confessed for the sum of $19,248.53. Save for such action of the board, judgment could not have been obtained in that suit until after the first Monday of November, 1878,—the return-day of the writ of summons.

At the date of the special meeting of the board of directors the corporation was insolvent, and this must have been known to the board, whose purpose in authorizing the confession of judgment undoubtedly was to give Jacob Tome priority of lien over Coons & Braine. I am, however, satisfied from the evidence that there was no actual fraud in the transaction, either on the part of Tome or the board of directors. The claim in suit was an honest debt due Tome, and the corporation was without defence. It may be assumed, too, that the board entertained the conviction that the claim which Coons & Braine were pressing to judgment was not a meritorious one, and doubtless the board believed they had morally and legally the right to prefer Mr. Tome by giving him the prior judgment lien.

But could the board of directors, under the circumstances, give such preference to Jacob Tome, who was both a director of the corporation and the president, and also the principal stockholder, owning, indeed, at least eight-tenths of the entire capital stock? I am of opinion that they could not. The mortgaged premises, it is shown, are wholly insufficient to pay the principal of the mortgage debt; and if the lien of Tome's confessed judgment is to prevail over that of Coons & Braine, the latter will receive nothing out of the assets of this insolvent corporation. Such a result, thus brought about, would be so inequitable that it cannot receive judicial sanction. True, a failing debtor, ordinarily, may prefer one creditor over another. But the circumstances here were such as to take the case out of the general rule. The directors of a corporation stand in confidential relations to its creditors, towards whom they are bound to act with perfect fairness. They are, at least, *quasi* trustees for the creditors; and where the corporation is insolvent, good faith forbids that the directors should use their position to save themselves, or one of their number, at the expense of other creditors. *Drury* v. *Cross,* 7 Wall. 302; *Jackson* v. *Ludeling,* 21 Wall. 616; *Richards* v. *New Hampshire Ins. Co.* 43 N. H. 263.

The special prayers of the bill in respect to Tome's said judgment are that he may be restrained from proceeding to enforce it by execution, and that it be declared null and void. But this is not the

measure of relief to which the complainants are justly entitled. Tome's judgment, as we have seen, is not tainted with actual fraud. It represents a *bona fide* debt, and while it cannot be allowed priority over the judgment of the complainants, it is not to be treated as a nullity, or postponed to the complainant's judgment. Equity, however, does require that the complainant's judgment and Tome's said judgment, in respect to the commencement of lien, shall be placed on a footing of equality, and shall share *pro rata* in the proceeds of the real estate available for their payment.

The mortgage above recited contains a provision that, in case of default exceeding 90 days in the payment of any of the interest coupons, the whole principal of all the aforesaid bonds "shall thereupon become due and payable," etc. Such default having occurred, Jacob Tome, who, we have seen, owned all the bonds, on November 23, 1878, brought an action in his own name in this court against the Minnequa Springs Improvement Company to recover the principal of the bonds; and on December 4, 1878, for want of an affidavit of defence, judgment under the rules of court was entered against the corporation for $250,000. The complainants impeach this judgment on the ground that Tome could not enforce the clause whereby the principal of the bonds became due, except through Benjamin S. Bentley, the trustee named in the mortgage, or without notice to him, and a written request first made upon him to proceed according to the provisions contained in the mortgage. But what right have the complainants to set up the alleged irregularities? The proceedings in that suit were altogether adversary, and as the corporation suffered judgment to go by default, and is not complaining, why should Coons & Braine be permitted to question the regularity of the proceedings? Moreover, this judgment having been entered after the complainants' lien had attached, I am at a loss to see how they are in anywise prejudiced. Their prayers for relief, so far as they relate to this judgment, must, therefore, be refused.

It appears that in November and December, 1878, the Minnequa House and its contents, etc., were destroyed by fire. This property was insured for the benefit of the holders of said bonds, and by the terms of the policies the loss was payable to Bentley, the trustee. After the fire, Bentley executed to Jacob Tome a power of attorney authorizing him to collect the insurance moneys. Pursuant to this authority, Tome collected about $43,000,—from the insurance on the premises about $19,000,—and the balance on account of the buildings. The whole of this money Tome applied to the principal of his debt

on the said bonds, entering a credit therefor on his $250,000 judgment. Of this application complaint is made by Coons & Braine, who insist that these moneys should have been applied first to the matured interest coupons embraced in Tome's earlier judgment, (for $19,248.53,) and thereby that judgment would have been almost entirely paid, to the relief of the complainants. But upon what principle can the complainants control the application of the insurance moneys? What equities have they superior to those of Jacob Tome? I perceive none. The corporation, it is to be observed, did not undertake to direct the application, and is not objecting to the appropriation made by Tome. His appropriation is the very one the law itself would have made, in the absence of any by Tome or the corporation; for it is well settled that the law will apply a payment in the way most beneficial to the creditor, and therefore to the debt least secured. *Field* v. *Holland*, 6 Cranch, 8; *Pierce* v. *Sweet*, 33 Pa. St. 151; *Foster* v. *McGraw*, 64 Pa. St. 464.

Let a decree be drawn in accordance with the views expressed in this opinion.