RODGERS-WADE FURNITURE CO. v. WYNN.

(Court of Civil Appeals of Texas. Amarillo. April 12, 1913.)

1. PARTNERSHIP (§ 241*)—RETIREMENT—LIABILITY OF RETIRING PARTNER—NOTICE.

A partner who retires from the firm by selling his interest therein to another is not liable on a firm note subsequently executed to a payee having notice of the retirement before accepting the note.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 479½, 480, 651, 652, 654, 657, 659, 665; Dec. Dig. § 241.*]

2. PARTNERSHIP (§ 242*) — RETIREMENT — NOTICE—EVIDENCE—QUESTION FOR JURY.

Where, on the issue whether the payee of a note given by a firm had, before accepting the note, notice of a partner's retirement by transferring his interest to another, the purchaser of such latter interest testified that a representative of the payee was informed of the transfer and shown the bill of sale before the giving of the note, the question of notice was properly submitted to the jury.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 500–508, 663; Dec. Dig. § 242.*]

3. TRIAL (§ 295*)—INSTRUCTIONS—CONSTRUCTION AS A WHOLE.

Any error in a charge, that any information that would put a prudent man on inquiry is notice of a dissolution of a firm, is cured by the statement in the same paragraph of the charge that notice brought home to the agent of a party as to a particular transaction is no-

tice to the party, and that if the person authorized to act for a creditor of a firm had notice of the fact that a partner had sold his interest in the firm the notice was notice to the creditor.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 703–717; Dec. Dig. § 295.*]

**4. CORPORATIONS (§ 428*)—NOTICE TO AGENT.**

Notice to an agent of a corporation, which is a creditor of a firm, that a partner has retired, is notice to the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1748–1761; Dec. Dig. § 428.*]

**5. PLEADING (§ 292*) — VERIFICATION — ACCOUNTS—AFFIDAVIT.**

A defendant sued on an itemized account due from a firm, in which he had been a partner, who files a sworn plea denying that he was a partner when the items specified in the account were sold, need not file a controverting affidavit of the verified account made, by Sayles' Ann. Civ. St. 1897, art. 2323, prima facie evidence.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 880; Dec. Dig. § 292.*]

**6. PAYMENT (§ 41*)—APPLICATION.**

Where neither the creditor nor the debtor applies a partial payment to any particular debt or to any part of a single debt, the payment must be applied as the justice of the case demands.

[Ed. Note.—For other cases, see Payment, Cent. Dig. § 48; Dec. Dig. § 41.*]

**7. PARTNERSHIP (§ 241*)—RETIREMENT—LIABILITY OF RETIRING PARTNER—NOTICE.**

A partner, who retires from the firm, is liable to a creditor for the part of an account charged until notice of the retirement.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 479½, 480, 651, 652, 654, 657, 659, 665; Dec. Dig. § 241.*]

**8. PARTNERSHIP (§§ 238, 239*)—RETIREMENT—LIABILITY OF NEW PARTNER—ASSUMPTION OF INDEBTEDNESS.**

A new partner of an existing firm is not liable for debts previously incurred, in the absence of agreement to that effect, express or implied; and a partner transferring his interest in the firm to a third person may, as a part of the consideration, require the third person to assume the outstanding indebtedness of the firm.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 487, 488, 491, 492, 495–499; Dec. Dig. §§ 238, 239.*]

**9. PARTNERSHIP (§ 242*)—RETIREMENT—LIABILITY OF RETIRING PARTNER—BURDEN OF PROOF—APPLICATION OF PAYMENTS.**

Where a retiring partner sought to escape liability for firm debts accruing prior to notice of the retirement, he had the burden of showing that the purchaser of his interest in the firm assumed the firm debts; and, where he failed to do so, payments made by the new firm could not be applied to the debts incurred prior to the retirement and notice thereof.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 500–508, 663; Dec. Dig. § 242.*]

**10. APPEAL AND ERROR (§ 1002*)—ASSIGNMENTS OF ERROR—REVIEW.**

An assignment of error complaining of apparent contradictions and discrepancies in the testimony will not be considered; that being exclusively for the jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. § 1002.*]

**11. PARTNERSHIP (§ 242*)—ACTIONS—PLEADINGS.**

A creditor of a firm, who declares on a note in which the indebtedness, evidenced by an account prior to his receiving notice of a partner's retirement, was merged, may not recover for the indebtedness incurred prior to the notice, in the absence of an alternative pleading on the account covering that time.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 500–508, 663; Dec. Dig. § 242.*]

Appeal from District Court, Moore County; D. B. Hill, Judge.

Action by the Rodgers-Wade Furniture Company against J. C. Wynn. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

A. P. Dohoney, of Paris, and Gustavus & Jackson, of Amarillo, for appellant. Mathis & Kay, of Wichita Falls, for appellee.

HALL, J. Appellant, a private corporation, of Paris, Tex., brought this suit against appellee, upon a note executed by the W. F. Jourdan Furniture Company of Wichita Falls, Tex., for $800, and an itemized verified account, showing a balance due of $1,063.42. The note was dated April 20, 1908, and provided for interest and attorney's fees. The items on the account were dated from February 10, 1908, to January 21, 1909. Plaintiff further alleged that during the time of the transaction involved appellee, Wynn, was a member of the firm of W. F. Jourdan Furniture Company; that said firm was bankrupt and that the members thereof, except appellee, had been discharged in bankruptcy. Defendant's answer included a plea of non est factum, denial under oath of the justness of the account, denial of the partnership, and alleged that prior to the time of the transactions involved he had sold his interest in the business of W. F. Jourdan Furniture Company and retired from the firm. Appellant's first assignment is expressly waived.

[1] By its second assignment, it is contended that the court erred in instructing the jury to find for the defendant upon the note in controversy, if they found from the evidence that defendant had retired from the firm of W. F. Jourdan Furniture Company prior to the time of the execution of said note and that plaintiff had notice of such retirement before accepting said note. This question has been settled adversely to appellant's contention in several cases in this state. Baptist Book Concern v. Carswell, 46 S. W. 858; Green v. Waco State Bank, 78 Tex. 2, 14 S. W. 253; White et al. v. Hudson et al., 36 S. W. 332; Blanks v. Halfin, 30 S. W. 941.

[2] The first paragraph of the court's charge submitted to the jury the question of notice of Wynn's retirement from the W. F. Jourdan Furniture Company, having been brought to appellant, and this charge is attacked by appellant in its 3, 8, 10, 11, 18,

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

and 20 assignments. The testimony of Tuttle upon this question is sufficient to warrant the court in submitting the issue to the jury. He testified: "At the time this note was signed on the day and about the time it was signed, myself and Mr. Jourdan and the representative of the Rodgers-Wade Furniture Company were present. The man I speak of as the representative of the Rodgers-Wade Furniture Company came to Wichita Falls to secure a note from the W. F. Jourdan Furniture Company for the Rodgers-Wade Furniture Company to have a settlement with Jourdan for the Rodgers-Wade Furniture Company. I was introduced to this man. As near as I can remember, we met there after supper, and he asked Mr. Jourdan in what way I was connected with the firm, inasmuch as I was there while the transaction was about to take place, and he told them then that I had a half interest in the W. F. Jourdan Furniture Company, and I also showed him the bill of sale that I had in the safe. The same bill of sale I have here and the note (meaning the note sued on herein) was signed later in the evening, after this information was given and the bill of sale shown him."

[3] Appellant further insists under its fourth assignment that the court erred in the first paragraph of its charge in stating that any information that would put a prudent man upon inquiry is notice of a dissolution of a partnership. Reference to the charge shows that, if this was error in the same paragraph, the court correctly charged the jury that notice brought home to an agent of a party in regard to a particular transaction is equivalent to notice to the party himself, and that if the jury believed that any person empowered and authorized to act for plaintiff in connection with the settlement, and collection of the debt due plaintiff, at the time of the execution of said note, had notice of or knew of the fact that defendant had sold his interest in the W. F. Jourdan Furniture Company, then that such knowledge or notice to such person would be notice to the plaintiff; and this part of the charge is also assailed by appellant insisting that actual notice to appellant of appellee's retirement from the firm, and not merely constructive notice, is required.

[4] In Gilbough v. Stahl Building Co., 16 Tex. Civ. App. 448, 41 S. W. 535, Pleasants, Justice, said: "To warrant a finding against the plaintiffs on this issue, the evidence must either show actual notice to them or to F. M. Gilbough, or it must establish facts which would charge them with notice—facts which would put one of ordinary prudence on inquiry." And in the case of Bonnett v. Tips Hardware Co., 59 S. W. 59, appellant's second contention is denied by the holding in that case that constructive notice is sufficient. The appellant herein being a corporation and its business being transacted with the W. F. Jourdan Furniture Co., through its agent, notice to its agent is ordinarily the only kind which could be given, and we think there is no error in the first paragraph of the charge.

[5] The court submitted, in his charge for the consideration of the jury, the question of the correctness of the verified account. The account was sworn to under article 2323, Sayles' Civil Statutes, which makes such an account prima facie evidence of the fact that it is just and true, that it is due, and that all just and lawful offsets, payments, and credits have been allowed. In the absence of a controverting affidavit, the introduction of a verified account proves: (1) Its correctness; (2) the sale; (3) the delivery; (4) the price; and (5) the credibility of the affiant. The appellee filed a controverting affidavit sufficient under the statute, and in addition thereto. a sworn plea, denying that he was a member of the firm of W. F. Jourdan Furniture Company when the items specified therein were sold. His denial of partnership having been filed rendered it unnecessary to file a controverting affidavit of the account under the statute. The testimony shows that there was no effort to "deny the account or any item therein," nor, in fact, to question any of the matters stated above which the introduction of the account in evidence established. Appellee testified: "I do not know whether the account sued on is correct or not." W. F. Jourdan's testimony was taken and he failed to deny the account in any particular. The only question at issue with reference thereto was whether or not appellee was a member of the firm during the time the items of the account were sold. Over appellee's sworn plea, denying partnership, the introduction of the account in evidence did not render him liable, and the court should not have submitted to the jury the correctness of the account. Appellee's real defense in no manner affected the justness or correctness of the account against the W. F. Jourdan Furniture Company, as the firm existed upon the dates set out in the statement of account. The fifth assignment is sustained, and what is here said disposes of the sixth and seventh assignments.

[6-9] The fifth paragraph of the court's charge is as follows: "You are further instructed that plaintiff in its petition admits a credit on the account introduced in evidence in the sum of $1,097.46, and you are instructed that the amount of such payment will be applied to the satisfaction of the items of indebtedness first accruing as shown by said account." And the eighth paragraph of the charge is as follows: "You are instructed to apply the credits of $1,097.46 set out in plaintiff's petition to the satisfaction of the same amount of the items first accruing in the itemized account introduced in evidence before you, and will consider defendant's liability or nonliability only with

reference to such items of the account, if any, remaining unsatisfied after such application of such credit." The giving of these instructions is the basis of appellant's ninth assignment of error. The application of payments in a case like this, where no intention to make the application by either party appears, is a question of considerable difficulty, and one upon which the courts and text-writers have disagreed. Fairchild v. Holly, 10 Conn. 175; Morgan v. Tarbell, 28 Vt. (2 Williams) 498; Gilmore on Partnership, 260; Allen v. Brown, 39 Iowa, 330; Coleman v. Lansing, 65 Barb. (N. Y.) 54; 2 Am. & Eng. Enc. of Law, 463, note 1; Storey on Partnership, § 157; Thurber v. McIntyre, 9 N. Y. St. Rep. 816; Allcott v. Strong, 9 Cush. (Mass.) 323; 30 Cyc. 617; Burns v. Pillsbury, 17 N. H. 66; Scott v. Kent, 54 N. Y. Super. Ct. 257; Shenks' Appeals, 33 Pa. 371. It will be observed, however, that most of the authorities cited, whether they hold that the application of the payment will be made to the oldest item of the account or otherwise, announce the doctrine that if equities intervened it is the duty of the court to make such application of the payments as the justice of the case demands. The most usual application made by the courts is to the payment of the earliest debt or item on the account, as was done by the court in the instant case, and this rule is adopted more often in suits upon current accounts. Phipps v. Willis & Bro., 11 Tex. Civ. App. 186, 32 S. W. 801; Id., 93 Tex. 648; Shuford v. Chinski, 26 S. W. 141; Willis & Bro. v. McIntyre, 70 Tex. 34, 7 S. W. 594, 8 Am. St. Rep. 574. Pleasants, Justice, said in the Phipps Case: "The rule, which requires unappropriated payments to be applied to the items in a running account according to their priority, has its foundation, we think, in the presumed intention of the debtor, rather than in the purpose of the court to prevent the bar of the statute. When justice demands it, the court will apply such payments to accounts which are barred; and we must therefore look for some other reason for the rule than the purpose to save the account from limitation, and that reason is, we think, the presumed intention of the debtor, when he made the payments to apply them to the liquidation of the account in the order in which the items of indebtedness were incurred." It will be observed, however, that in none of the cases cited from the reports of our own state was the question of application of payments made by a new firm to debts due by the old firm, considered. The general law is, as has been announced in the cases cited, that when there are payments made, and neither the debtor nor the creditor applies them to any particular debt or to any part of the debt (when there is but one debt), there seems to be no inflexible rule for applying the payments, but they must be applied as the justice of the case de-

mands. Phillips v. Herndon, 78 Tex. 378, 14 S. W. 857, 22 Am. St. Rep. 59; State v. Middleton, 57 Tex. 185; Taylor v. Coleman, 20 Tex. 772; Proctor v. Marshall, 18 Tex. 63. By reason of the peculiar facts and circumstances in this case, we think this is the rule which we should adopt. The account sued on herein, according to the dates of the several items, began February 10, 1908, and was closed January 21, 1909. Wynn transferred his interest in the firm business to Tuttle on March 30, 1908, and appellant was notified of the transfer April 20, 1908. Under the law, Wynn would be liable to appellant for that part of the account charged during the months of February and March and until April 20th. The effect of the court's instructions was to apply payments made by the new firm more than a year after Wynn had disposed of his interest in the business to the extinguishment of that portion of the account. The note sued upon executed on April 20, 1908, is shown by the evidence to have been in lieu of the unpaid account against the old firm prior to February 10, 1908. In our opinion, the equities in this case, as will appear from the above statement of facts, make the instructions given by the court to credit the payments upon the first items of the account improper. It has been held by our Supreme Court, in the case of Freeman v. Huttig Sash & Door Co., 153 S. W. 122, that a new member of an existing firm does not become liable for debts already incurred in the absence of an agreement of that effect, express or implied, and that the presumption of law is against the assumption of such liability. Wynn had the right, in transferring his interest in the firm business to Tuttle, to have Tuttle assume part of the outstanding indebtedness as part of the consideration for the transfer; but this record is silent upon that point, and the presumption, as stated in the above-cited case, is that Tuttle did not assume any of the indebtedness existing against the old firm and for which Wynn was still liable. Neither Tuttle nor Jourdan are parties to this suit, and, so far as the record shows, are indifferent as to what application the court may make of the payments made by them. The record shows that the firm was thrown into bankruptcy soon after the last payments were made and they have both been discharged by the bankrupt court.

In this state of the case, the pertinent inquiry is: What right has appellee, Wynn, to insist that payments by the new firm be applied by the court so as to extinguish indebtedness for which he is clearly liable? Appellant contends that Tuttle paid full value for Wynn's interest in the business. In other words, that he paid Wynn one-half of the invoice price of the stock, exclusive of the debts. The bill of sale recites the consideration paid by Tuttle to Wynn as $5,600. Ap-

pellant introduced in evidence the deposition of Geo. W. Parker, official reporter of the United States District Court, whose testimony shows the evidence of Wynn, during the bankrupt proceedings, to have been as follows: "Q. What was the consideration of the sale of your interest in that business? A. The consideration was $4,200. Q. Was that consideration paid? A. I had bought a piece of land from Mr. Tuttle—his half interest in a tract of land there—and he was owing me quite a little sum of money, and in the trade he gave me $4,200 for my interest in the business, which was 75 cents on the dollar on what the business was supposed to be worth, what Mr. Jourdan wrote me the business was worth after he had invoiced in January. It amounted to $4,200. That is the amount that he paid me for the business. That is, he was to pay. * * * He didn't pay." If as a fact Tuttle paid Wynn for the full value of his half interest, as shown by the invoice, without taking into consideration any of the indebtedness, it would be inequitable for Wynn to escape payment of any indebtedness which accrued prior to April 20, 1908. If he did not get full value, but Tuttle paid him for his half interest less the indebtedness against such interest, then the application of the payments should be made in accordance with the rule announced by the court in the charges quoted. It will be seen, from the testimony quoted above, that the record is not clear upon this point, and the burden was upon appellee to show the facts bearing upon this issue. Even if appellee has failed inadvertently to protect himself in his trade with Tuttle as to the debts of the old firm, this fact should not operate to the detriment of appellant. Appellant is not shown to be at fault in any particular.

We think the case of St. Louis Type Foundry Co. v. Wisdom, 72 Tenn. (4 Lea) 695, should control the disposition of this controversy. In that case it is said: "Previous to the 3d day of August, 1870, W. W. Gates, Don Cameron, and J. T. Hicks were partners in the publication of the West Tennessee Whig, and D. M. Wisdom and two other persons were partners in publishing the Jackson Tribune. About the date mentioned, Gates, Cameron, Hicks, and Wisdom formed a new partnership, bought out Wisdom's partners, and commenced the publication of a new paper, called the Jackson Whig & Tribune. The style of the old firm as well as the new firm was W. W. Gates & Co. The old firm had a running account with the St. Louis Type Foundry Company, and the new firm continued to make purchases from the same company. From the 3d of August, 1870, to the 15th day of December, 1870, the purchases of the new firm from the foundry company amounted to $1,248.65, and the payments on the account during the same time amounted to $1,340.00. Gates was the bookkeeper of both the old and new firm, and made all the payments. On the 15th day of December, 1870, Gates closed the account of the foundry company by executing three notes in the name of W. W. Gates & Co. for $658.76 each. The present suit was brought on these notes against Gates, Hicks, and Wisdom, as partners, under the name of W. W. Gates & Co. Gates and Hicks, being equally liable whether the notes were given for the debt of the old firm or new firm, have acquiesced in a judgment against them. Wisdom contested his liability under pleas of nil debit payment and non est factum. The case was tried by the judge without a jury, who found the issues and rendered a judgment in favor of Wisdom. The Type Foundry Company appealed in error. As a fact, the account on the plaintiff's books being in the name of W. W. Gates & Co., for the old firm, was continued under the same name for the new firm; but there is nothing to show that this was done with the assent of the members of the new firm. There is evidence that the first large payment after the 3d of August, 1870, was raised and made for the purpose of giving the new firm credit with the plaintiff. The proof is clear that the plaintiff, at the time the notes sued on were given, knew that the account, for the balance of which they were executed, had been contracted by separate firms, and Gates himself proves that neither he when he gave them, nor the agent or members of the Company who received the notes, intended to bind the new firm for the debts of the old firm. The previous payments after the organization of the new firm were made by Gates without any direction as to their appropriation, and it does not appear that the plaintiff then, or at any other time, made a specific appropriation thereof. Three small and two large payments were made between the 3d of August and the 15th of December, 1870. The defendant claims that the two large payments, which together exceed the purchases of the new firm, were made with the assets of that firm. The circuit judge so found as a fact, and, there being evidence to sustain this view, the finding is, like the verdict of the jury, conclusive under the rule of this court. The evidence has been examined, however, and leaves no doubt whatever as to the first of the large items, and very little as to the other. The money which made these payments was furnished by the new firm. The notes were not intended to be binding on the new firm, nor would they be in law, except to the extent of the consideration which inured to the benefit of that firm. If then the payments, which together exceeded the account against the new firm, be applied to the satisfaction of that account, there would be no consideration to sustain the notes nor the action based thereon. The plaintiff must fail in his action unless he can show that the payments should be otherwise applied, and the argument on behalf of the plaintiff

is that the law will apply them to the oldest items on the whole account, although those items were contracted by the old firm. In other words, the contention is, that, in the absence of any agreement of the parties, the law will apply the money of one person or firm to the payment of the debt of another person or firm. Such a rule would be manifestly inequitable, and can hardly be sound." The court then announced that where no appropriation has been made by either party the law will apply it according to the intrinsic justice and equity of the case, and then continues: "For, as we have seen, neither the debtor nor the creditor is shown to have made at the time of payment, a specific appropriation of the payments, and it would clearly not be 'according to the intrinsic justice and equity of the case' to apply the money of the new firm to the payment of the debts of the old firm. There is another difficulty in plaintiff's way. The question presented is not one of the application of payments as between debtor and creditor, where each may in turn elect to make the application, and where, in the absence of an election, the law would apply them, but the payment of the funds of one party to a creditor, who has a debt against that party and also a debt against another of the same name. The creditor may elect to apply the payment to any debt of the debtor, or the law may apply it for him. But the creditor, in the absence of an agreement, express or implied, cannot apply the money to the satisfaction of a debt of a third person; nor, of course, would the law ever so apply it. If a payment may, by reason of the peculiar nature of the business, the assumption of a new partner, or a long-continued course of dealings, be applied to another debt than that of the payer, the application can only be sustained upon the ground of assent, express or implied. No such assent appears in this case. There can be no binding assent by conduct except with full knowledge of all the facts, and the whole doctrine of the appropriation of payments turns upon the intentions of the debtor, either express, implied, or presumed. 1 Story's Equity Jurisprudence, 459c."

We have quoted from the opinion at length because the facts are peculiarly applicable to the facts of the instant case and the law announced meets our approval. Tuttle had invested his money, his time, and his energy in the business of W. F. Jourdan Furniture Company on March 30th; had paid appellee to his satisfaction for his interest therein. Manifestly, the funds acquired thereafter by the firm belonged to Tuttle and his partner, and it would violate every known rule of business and would be unsupported by any facts in this case for us to presume that such funds were paid to appellant upon the debts due by the old firm. And the charge of the court has the effect of applying one man's money to the payment of another's debt. The error in giving these two paragraphs of the charge will require a reversal of the case.

In view of another trial, we desire to call the court's attention to this rule: "What were the intentions of the parties, whether of the debtor or creditor, is a question of fact to be determined by the jury from all the circumstances of the case. When neither the debtor nor the creditor has manifested an intention to make application of a payment and no such intention can properly be deduced from all the circumstances of the case, the court will direct the application equitably to all parties concerned." 2 Am. & Eng. Enc. of Law, p. 452.

[10] The twelfth assignment calls to our attention some apparent contradictions and discrepancies in the testimony which is a matter exclusively for the jury. This assignment will not be considered.

The brief contains no assignment numbered 13, and the fourteenth assignment is disposed of by what has been said in our discussion of the second assignment.

[11] The fifteenth assignment is based upon the court's refusal to give appellant's fourth special charge, instructing the jury that if they believed from the evidence that plaintiff was given actual notice of the sale by Tuttle, at the time of the execution of the note in controversy, nevertheless plaintiff was entitled to recover for all goods sold by it to the W. F. Jourdan Furniture Company during the time Wynn was a member of the firm until actual notice was given to plaintiff. The court did not err in refusing this charge because it limited the notice to actual notice, when, as we have heretofore said, constructive notice was sufficient; and the charge was further improper in that there was no pleading by appellant upon which the jury could have based a verdict for the goods sold to the Jourdan Furniture Company prior to the time of the execution of the note. Plaintiff's petition declared upon the note in which the indebtedness evidenced by the account prior to April 20, 1908, had been merged, and there was no alternative plea upon an account covering the same items and period of time.

The seventeenth assignment of error has already been disposed of by what we have said in our disposition of the third assignment. The testimony of Tuttle tended to show that the party to whom he communicated the fact that he had purchased Wynn's interest was the representative of appellant who took the note sued upon.

The nineteenth assignment presents the same matter which we discussed under the ninth assignment.

Reversed and remanded.