## NOYES v. JESSON et al.

(Fourth Division.   Fairbanks.   April 21, 1920.)

No. 1756.

(*Syllabus by Editorial Staff.*)

**1. Judgment ☞895—Payments—Application.**

Debtors, refusing to pay judgments until they had been brought into court, where they persisted in their refusal to pay until orders in personam issued, *held* to have no rights as to application of payments to different items of judgment.

**2. Execution ☞397—Equitable Proceeding in Aid of Judgment.**

Technical objections will not be permitted to defeat the purpose of a proceeding in equity to subject property of judgment debtors to payment of judgments for wrongful and fraudulent acts as bank directors and objection that no inquiry could be made as to a debtor's transactions after the time judgment was entered on mandate from the court on appeal, and after

☞See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

examination of the debtor was begun, and objection that such equity proceedings were terminated by orders in personam against the debtors, were without merit.

**3. Execution ⬯404—Proceedings in Aid—Receiver.**

 In proceeding in equity to subject the property of judgment debtor to payment of judgments for wrongful and fraudulent acts as bank director, appointment of receiver of all his property, after showing ability to pay and refusal to do so, *held* justified by the facts.

The plaintiff herein on the 2d day of April, 1912, filed an action in this court against the above defendants, praying for an accounting to determine the amount due to plaintiff for the wrongful, fraudulent and negligent acts and conduct of the defendants as directors and officers of the Washington-Alaska Bank herein (formerly Fairbanks Banking Company), and that plaintiff have judgment entered against defendants, and each of them, respectively, upon such accounting. Issue having been joined, such further proceedings were had that on the 15th day of June, 1914, Hon. F. E. Fuller, then judge of the district court for the territory of Alaska, Fourth judicial division, entered judgment and decree in favor of the plaintiff and against certain of the defendants as follows:

(1) R. C. Wood, John L. McGinn, Ray Brumbaugh, and J. A. Jesson, jointly and severally, for the sum of $33,720.

(2) J. A. Jesson for the sum of $13,400.

(3) J. A. Jesson and James W. Hill, jointly and severally, for the sum of $1,500.

(4) J. A. Jesson, James W. Hill, and E. R. Peoples, jointly and severally, for the sum of $1,100.

(5) J. A. Jesson, James W. Hill, and Ray Brumbaugh, jointly and severally, for the sum of $1,000.

(6) J. A. Jesson, Ray Brumbaugh, and John L. McGinn, jointly and severally, for the sum of $3,000.

(7) J. A. Jesson, John L. McGinn, and Ray Brumbaugh, jointly and severally, for the sum of $1,000.

The court further adjudged and decreed that the plaintiff take nothing against the defendants J. A. Healey, John A. Clark, and George Preston by reason of any of the matters and things set forth in the complaint, and that the action be

⬯See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

dismissed as to them; that the plaintiff take nothing, further than as above specified, against the defendants R. C. Wood, E. R. Peoples, John L. McGinn, J. A. Jesson, Ray Brumbaugh, and James W. Hill by reason of any of the matters and things set forth in the complaint; that the defendants R. C. Wood, E. R. Peoples, John L. McGinn, J. A. Jesson, Ray Brumbaugh, and James W. Hill pay the costs of the action.

Thereupon such further proceedings were had by appeal by the defendants Wood, Peoples, McGinn, Jesson, Brumbaugh, and Hill, and by cross-appeal by the plaintiff, to the United States Circuit Court of Appeals for the Ninth Circuit and the said Ninth Circuit court having issued its mandates, and the same having been filed in this court, that this court in conformity with said mandates did, on August 1, 1918, issue judgment in favor of the plaintiff herein and against certain of the defendants as per the following items set forth in said judgment:

(1) R. C. Wood, John L. McGinn, Ray Brumbaugh, and J. A. Jesson, jointly and severally, $33,720.

(2) J. A. Jesson, $13,400.

(3) J. A. Jesson and James W. Hill, jointly and severally $1,500.

(4) J. A. Jesson, James W. Hill, and E. R. Peoples, jointly and severally, $1,100.

(5) J. A. Jesson, James W. Hill, and Ray Brumbaugh, jointly and severally, $1,000.

(6) J. A. Jesson, Ray Brumbaugh, and John L. McGinn, jointly and severally, $3,000.

(7) J. A. Jesson, John L. McGinn, and Ray Brumbaugh, jointly and severally, $1,000.

(8) John A. Jesson, John A. Clark, and J. A. Healey, jointly and severally, $9,742.86.

(9) John A. Jesson, James W. Hill, and R. C. Wood, jointly and severally, $23,486.66.

(10) John A. Jesson, James W. Hill, and R. C. Wood, jointly and severally, $51,228.97.

(11) John A. Jesson, James W. Hill, and R. C. Wood, jointly and severally, $76,688.83.

(12) John A. Jesson, James W. Hill, and R. C. Wood, jointly and severally, $72,537.52.

(13) John A. Jesson, R. C. Wood, John L. McGinn, and Ray Brumbaugh, jointly and severally, $16,591.10.

(14) R. C. Wood, John L. McGinn, Ray Brumbaugh, J. A. Jesson, James W. Hill, and E. R. Peoples, jointly and severally, $20.10.

(15) John A. Jesson, John A. Clark, J. A. Healey, James W. Hill, R. C. Wood, John L. McGinn, and Ray Brumbaugh, jointly and severally, $403.55.

The decisions of the Ninth Circuit Court of Appeals pertaining to the judgments above are found in 245 Fed. 46 to 53, inclusive, 157 C. C. A. 342, and 245 Fed. 742 to 745, inclusive, 158 C. C. A. 144, and 247 Fed. 72 to 83 inclusive, 159 C. C. A. 290. Petitions for writs of certiorari were denied by the Supreme Court of the United States. 245 U. S. 667, 38 Sup. Ct. 133, 62 L. Ed. 538; 247 U. S. 512, 38 Sup. Ct. 579, 62 L. Ed. 1243.

The mandate on the appeal of Wood, Peoples, McGinn, Jesson, Brumbaugh, and Hill was filed in this court May 29, 1918. The mandate on the cross-appeal of the plaintiff was filed in this court July 6, 1918. In this connection it is interesting to note that on June 11, 1918, the defendants Wood, McGinn, and Peoples, by their attorneys, filed a motion to set aside the judgment rendered against them on the ground that the plaintiff had no authority to institute an action against them, for the reason that he was not at the time of the commencement of this action, and was not on June 11, 1918, a general receiver of the Washington-Alaska Bank. The motion was wholly without foundation in fact, and was promptly denied.

Morton E. Stevens, of Fairbanks, for receiver.

John L. McGinn, of San Mateo, Cal., and A. R. Heilig, of Portland, Or., for debtors Wood and McGinn.

BUNNELL, District Judge. Compiled Laws of Alaska §§ 1127, 1128, 1129, 1130, and 1131 prescribe the method of compelling a judgment debtor to subject his property to the satisfaction of a judgment against him.

Under the provisions of the statute above cited, as will be more fully shown by the records and files in this case, the examination of judgment debtor R. C. Wood and of George Hutchinson, cashier of the First National Bank, garnishee

defendant, was begun on the 1st day of August, 1918. Further examination of these two witnesses was had the following day, but the same was not completed. The judgment debtor John L. McGinn was also examined August 2d.

The testimony of these witnesses disclosed that the judgment debtor Wood had at least $37,000 to apply in satisfaction of the judgments against him, for in answer to the question, "How much have you to pay these judgments?" he answered, "I think about $37,000." He further stated that, although this money was in San Francisco, it was subject to his control. Mr. Wood's testimony further disclosed that, besides more than liberally securing his bondsman on appeal for any loss they could possibly sustain, he had hypothecated his stock in the First National Bank of Fairbanks as security for debts of the Fairbanks Gold Mining Company; that his personal property, with the exception of 10 qualifying shares as a director of the First National Bank, had generally by a rather devious process been removed from the territory of Alaska; that upon being interrogated on the subject of whether or not he intended to place the $37,000 to the credit of the plaintiff he replied, "That depends; if there is no other way to defeat the judgment;" that he kept no book of personal accounts, although his personal cash income since 1911 amounted to over $200,000; that in April, 1918, he told the judge of this court that as soon as the mandates were filed he would pay the sum of $33,720. In an effort to show inability to pay more than $37,200 on the judgment against him, the witness testified that his individual expenses, improvements, and money given away amounted to $12,000 per year or more. The testimony of Wood and Hutchinson showed that it would be impossible to make a full and complete investigation of Wood's assets, without having before the court a copy of Wood's individual bank account with the First National Bank. The witness Hutchinson thought it would take some time to furnish such a copy. Thirty days was suggested as a reasonable time, to which suggestion Mr. Hutchinson assented. The witness McGinn testified that he had ample means to pay the judgment against him, but, in answer to the question, "Will you pay it, Mr. McGinn?" replied:

6 A.R.—16

"Not until I exhaust all my legal remedies. I contemplate the institution of some proceedings to set aside these judgments, and until those matters are disposed of I will not pay the judgment. If they are decided adversely to me, I will pay the judgment."

It will be remembered that these judgments against the defendants were because of their wrongful, fraudulent, and negligent acts and conduct while directors and officers of the Washington-Alaska Bank; that they had sought relief from the judgment of this court by going to the court of last resort; that in this wearing process, full of long delays, the receivership had been and was being caused an enormous expense; that judgment debtor Wood was the president of the First National Bank, had received for many years a handsome salary, and by virtue of his business acumen the first National Bank had paid enormous dividends; that he owned practically half of its capital stock; that judgment debtor McGinn owned nearly all the balance of the capital stock of the First National Bank; that he was a lawyer of ability and had amassed a fortune.

By the terms of the judgment entered August 1, 1918, in obedience to the mandates of the Ninth Circuit Court of Appeals, Wood and McGinn were jointly and severally liable in the sum of $50,734.75, and McGinn was liable in the sum of $4,000 jointly and severally with others than Wood. As to the ability of McGinn to pay it was unnecessary to take further testimony. As to Wood the hearing was not completed and could not be completed until the witness Hutchinson furnished Wood's individual bank account with the First National Bank. There was one thing determined for a certainty at this stage of the hearing, and that was that these two judgment debtors were well able to pay at that time at least $55,000. The court thereupon directed the attorneys for the receiver to prepare and present for the signature of the judge orders in personam. These orders were by their terms very lenient; in fact, were much more so than the circumstances warranted.

Apparently the judgment debtors Wood and McGinn apprehended that the orders in personam provided for their immediate imprisonment, and that if they were imprisoned the result would be a run on the First National Bank. Through their attorney, A. R. Heilig, Esq., they requested

the court not to file the orders, and through Mr. Heilig they agreed to pay into court the sum of $45,000 on August 6, 1918, and on or before October 15, 1918, John L. McGinn agreed to pay into court the further sum of $9,714.65. There was no agreement with the court as to how these sums were to be applied. The testimony showed they were able to pay at least that amount, and that McGinn was able to pay at any time any balance determined to be due from him. If any mistake was made in this regard, it was made by the court in not requiring that they pay forthwith the sum of at least $90,000. I take it, however, that it was within the discretion of the court to fix an amount for them to pay at the times specified, concerning which there could be no question, with the hope that in so doing they would proceed to the payment of the judgments against them.

There is some testimony about agreements they attempted to make with the receiver and his attorney. The fact is they made no agreement with either, nor could they do so. After believing they would be imprisoned if they did not pay $55,-000 forthwith, they hastened to try to put themselves in the position of making voluntary payments. Prior to the time execution issued it was their privilege or the privilege of their bondsmen to come into court and satisfy such items of the final judgment as they desired, but when they did not do so, and were brought into court and stated they would not pay the judgments, their right to make an election no longer existed.

If it could possibly be found by any stretch of the imagination that they had any right to make an application of the funds paid into court by them in satisfaction of any particular items of the judgment such a view is completely obliterated by this most remarkable writing accompanying their payment of $45,000 to the United States Marshal on August 8, 1918. It is entitled "Protest," and reads as follows:

"Protest.

"Whereas, on the 15th day of June, 1914, in the above-entitled court and cause judgments were entered against R. C. Wood and John L. McGinn, jointly and severally, in the sum of $33,720, and against said McGinn in the sum of $3,000, and also against said McGinn in the sum of $1,000;

"And whereas, on the first day of August, 1918, other judgments were entered in the above-entitled court and cause against the de-

fendants Wood and McGinn, jointly and severally, for the sum of $16,591.10, and costs on appeal amounting to $403.55;

"And whereas, on the first day of August, 1918, an execution was issued out of said court in said cause directed to the United States marshal for the Fourth division, territory of Alaska, requiring him to make said sums due on said judgments to satisfy said judgments out of the personal property of said debtors subject to execution, and if sufficient personal property of said debtors could not be found then out of the real property of said debtors in said Fourth division and territory not exempt by law on the day wherein the said judgments were docketed, and that he make due return of said writ;

"And whereas, upon said date the said United States marshal caused a writ of garnishment to be served upon the First National Bank of Fairbanks, Alaska, attaching all moneys or property of said Wood and McGinn in the possession of said bank or under its control;

"And whereas, based upon the affidavit of plaintiff and the certificate of said bank, the court, upon said first day of August, 1918, made an order requiring said Wood and McGinn to appear and be examined on oath concerning their interest in said bank and the disposition of their property, if any had been made;

"And whereas, in compliance with said order the said Wood and McGinn appear for oral examination before the judge of the above-entitled court on the first and second days of August, 1918, and upon such hearing it was disclosed that said Wood had placed with H. I. Moulton the sum of $37,500 as security for the sureties on the supersedeas bond given in said cause on appeal to the Circuit Court of Appeals from the above-entitled court, and that said McGinn had certain moneys and property situate in the state of California which was not subject to execution issued out of the above-entitled court, but was ample, with the moneys of the said Wood so left with the said Moulton as aforesaid, to satisfy in full the joint judgments against them and the joint and several judgments against said McGinn and others, but that the said Wood and McGinn refused to turn over said moneys or property to said receiver to satisfy said joint judgment against them, for the reason that said judgments were void and of no effect, the court never having acquired jurisdiction of the subject-matter of the action, and that the appointment of the receiver in the original cause No. 1597, entitled 'Tanana Valley Railroad Company and John Zug, Plaintiffs, v. Washington-Alaska Bank, a Nevada Corporation, Defendant,' pending in said court, was void, because no service of process has been made upon said defendant corporation, nor had said corporation entered an appearance in writing or by attorney in open court or otherwise, and that therefore no judgment can be rendered in said cause No. 1597 against the said defendant corporation, and that the funds and property of said corporation cannot therefore be used or applied in satisfaction of the claim of the plaintiffs in said cause or any other creditors, if any, of said

Washington-Alaska Bank, for the reason that no judgment can be rendered or entered in favor of said plaintiffs or any of the creditors of said bank. and that therefore the receivership proceedings are all ex parte and cannot serve any useful purpose. and that the enforcement of said so-called judgments against the said Wood and McGinn can serve no useful purpose on the grounds, aforesaid, and also that the proceedings in this case are void because said receiver never acquired any title to any claim by assignment or operation of law or otherwise that the Washington-Alaska Bank or its creditors may have had against the said Wood and McGinn on account of their acts as directors;

"And whereas, in disregard of said objections the court, at the conclusion of the testimony of the said Wood and McGinn, made an order requiring them to turn over to the plaintiff in above-entitled cause said sum of $37,500 and such other moneys and property of the said McGinn sufficient to satisfy said judgments against them, and unless they forthwith did so that an order for their arrest should be issued and that that they should be incarcerated in the federal jail at Fairbanks, Alaska, until said order was complied with;

"And whereas, said Wood and McGinn in order to prevent the levy upon and sale of their real and personal property situate in the territory of Alaska, and to avoid proceedings against their sureties on appeal, and particularly to avoid arrest and confinement in said jail, did make the following proposal to the judge of said court and the plaintiff and his attorney, to wit:

"'We, the undersigned, will pay, under protest, on August 6, 1918, the sum of forty-five thousand dollars by bank draft issued by the First National Bank of Fairbanks, Alaska, on the Bank of California, N. A., at San Francisco, California, which payment we will apply in satisfaction of the judgment entered in cause No. 1756 in the district court, Fourth division, Alaska, against us jointly and severally for $33,720 and in satisfaction of the judgment entered against John L. McGinn in said cause for $3,000 and in satisfaction of the judgment entered against said McGinn in said cause for $1,-000, and the balance of said sum, to wit, $7,280 we will apply upon account of the judgment entered against us in said cause, jointly and severally, for $16,591.10, and I, John L. McGinn, agree that I will pay the balance of said last-mentioned judgment, together with costs, amounting to $403.55 under protest, on or before October 15, 1918.

"'Dated at Fairbanks, Alaska, August 2, 1918.

"'R. C. Wood.

"'John L. McGinn.'

"And whereas, upon the signing of said proposal it was agreed by the judge of said court that the orders signed by him for the arrest of said Wood and McGinn should be placed in the hands of the clerk of said court, with instructions that the same were not to be filed unless the said Wood and McGinn failed to carry out the said promise hereinbefore made:

"Now, therefore, the said Wood and McGinn, in compliance with said promise and in order to avoid the arrest and incarceration in said federal jail of said Wood and McGinn, do now pay to the United States marshal the said sum of $45,000, under protest, to be applied in satisfaction of the judgments enumerated in their said proposal and promise to the judge of said court, and upon account of the judgment last enumerated therein, and do hereby notify you and each of you, and the attorneys for the plaintiff herein, that said money is paid under fear of imprisonment, and not because the same is due or owing to the plaintiff in said cause.

"And we hereby notify the plaintiff herein and his attorneys to keep and hold said money, and not to disburse or dispose of any part thereof to any person whomsoever, as the said Wood and Mc-Ginn will institute proceedings to recover back said money and to enjoin you, the plaintiff, herein from disbursing the same.

"R. C. Wood.

"John L. McGinn."

It is very doubtful if these debtors ever intended to institute any further proceedings as this "protest" would indicate. The real purpose was an attempt to make the record show that the judge of the court was permitting them to apply the money they were required to pay as they saw fit. No such an agreement was made, their statements in the "protest" notwithstanding.

The record shows that the judgment debtor McGinn, instead of making the payment he agreed to make on October 15, 1918, did not complete the same until January 15, 1920.

On February 24, 1920, no action having been instituted to recover the funds paid into court by Wood and McGinn as per their "protest," and it appearing that no statement of the individual bank account of judgment debtor Wood to be furnished by the witness Hutchinson had been filed with the clerk of the court or submitted to the receiver or his attorneys, notice of motion for further examination of R. C. Wood and George Hutchinson was duly served. Such further proceedings were had that the court fixed March 3, 1920, as the time for the appearance of the said Wood and Hutchinson for further examination. Objections were made to resuming the hearing that was in progress on August 2, 1918, and which was of necessity continued pending the furnishing of the individual bank account of Wood with the First National Bank. The examination could not be completed until the statement was furnished. The court did not state that

the examination was completed. No one thought it was completed, and there could not be and there was not any misunderstanding about it. The Compiled Laws of Alaska contain no Practice Act on the subject of supplemental proceedings. The matter of this hearing was pending before this court, and from time to time all matters pending were continued as the record fully discloses.

There was objection to any testimony concerning Mr. Wood's financial transactions after August 1, 1918. His counsel contended that it would require a separate and independent proceeding in order to investigate during the subsequent period. The contention is also made that the orders in personam were final orders, and that for that reason the proceedings had been terminated. Neither position, in my opinion, is well taken. Whether or not the orders in personam were appealable orders is a different question. The proceeding is in equity, and its purpose is to subject the property of these judgment debtors to the payment of judgments against them for their wrongful and fraudulent acts, while directors and officers of the defunct Washington-Alaska Bank. Technical objections will not be permitted to defeat this purpose.

The evidence is conclusive and positive that of the $45,-000 paid into this court on August 8, 1918, the sum of $37,-500 was the sole property of judgment debtor R. C. Wood, that the balance of said sum of $45,000 was the sole property of judgment debtor John L. McGinn, and that the said McGinn has also paid into this court from his own private funds the further sum of $10,526.30. These payments were not voluntary payments, but were made under and by virtue of the coercion and process of the supplemental proceedings herein.

These sums of money will be applied in satisfaction of the several items of the final judgment as follows: The $37,-500 paid by R. C. Wood will be applied pro rate to items Nos. 9, 10, 11, and 12, which are for the sums of $23,486.66, $51,-226.97, $76,688.83, and $72,537.53, respectively. These are the most precarious of the items against Wood and are unsecured. The sum of $18,026.30 paid by John L. McGinn will be applied as follows: Item No. 15, for $403.55 costs, will be first satisfied. Item No. 13, for $16,951.10 and ac-

crued interest in the sum of $811.65, will be satisfied next. The balance, or the sum of $220, will be applied to item No. 7 in the sum of $1,000. The foregoing application of the funds paid is made in accordance with the principles laid down in the following decisions: U. S. v. Kirkpatrick et al., 9 Wheat. (22 U. S.) 720, 6 L. Ed. 199; Jones v. United States, 7 How. (48 U. S.) 681, 12 L. Ed. 870; Nat. Bank, etc., v. Mechanics' Nat. Bank, 94 U. S. 437, 24 L. Ed. 176; Nichols, Shepperd & Co. v. Knowles (C. C.) 17 Fed. 494; Coons & Braine v. Tome et al. (C. C.) 9 Fed. 532; Mack et al. v. Adler et al. (C. C.) 22 Fed. 570; Phillips v. Bossard et al. (D. C.) 35 Fed. 99; Chambliss, Adm'r, v. Hass, Adm'r, 125 Iowa, 484, 101 N. W. 153, 68 L. R. A. 126, 3 Ann. Cas. 16; Lehigh Coal & Nav. Co. v. McLeod, 114 Me. 427, 96 Atl. 736; Kinkead v. Peet, 164 Iowa, 65, 145 N. W. 313; Cal. Nat. Bank of San Diego v. Ginty, 108 Cal. 148, 41 Pac. 38; Porter et al. v. Watkins, 196 Ala. 333, 71 South. 687; Stone Co. v. Rich et al., 160 N. C. 161, 75 S. E. 1077, Ann. Cas. 1914C, 244; Van Sciever v. King, 176 Mich. 605, 142 N. W. 1069; Campbell v. Kauffman Milling Co., 127 Mo. App. 287, 105 S. W. 287; Rodgers-Wake Furniture Co. v. Wynn (Tex. Civ. App.) 156 S. W. 340; Woolfolk v. Thomas, 164 Ky. 43, 174 S. W. 739; Mich. Com. Ins. Co. v. Rodger et al. (Mo. App.) 191 S. W. 1066; State v. U. S. Fidelity & Guaranty Co., 81 Kan. 660, 106 Pac. 1040, 26 L. R. A. (N. S.) 865; Santa Marina Co. v. Canadian Bank of Com. (D. C.) 242 Fed. 142.

Application has been made in this action for the appointment of a receiver of the estate of R. C. Wood. Section 1585 of the Compiled Laws of Alaska provides for the appointment of receivers. It is as follows:

"Sec. 1585. A receiver may be appointed in any civil action or proceeding, other than an action for the recovery of specific personal property—

"First. Provisionally, before judgment, on the application of either party, when his right to the property which is the subject of the action or proceeding, and which is in the possession of an adverse party, is probable, and the property or its rents or profits are in danger of being lost or materially injured or impaired;

"Second. After judgment, to carry the same into effect;

"Third. To dispose of the property according to the judgment, or to preserve it during the pendency of an appeal, or when an

execution has been returned unsatisfied and the debtor refuses to apply his property in satisfaction of the judgment;

Fourth. In cases provided in this Code, or by other statutes, when a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights;

"Fifth. In the cases when a debtor has been declared insolvent."

It is hardly necessary to comment upon the necessity of appointing a receiver to take charge of the estate of judgment debtor R. C. Wood. The evidence shows that his estate is in such a condition as to require it to be in the hands of some one who will conserve it and so handle it that it can be subjected to the lien of the judgment against him. Wood shows no disposition other than to entangle his estate and defeat the payment of the judgment against him. A receiver will be appointed. The court also finds that such receiver, when appointed and qualified, is entitled to receive from the said judgment debtor R. C. Wood a transfer or transfers by deed or deeds of conveyance, executed under the direction and supervision of the judge of this court, conveying to said receiver, for the purposes aforesaid, all of his legal and equitable right, title, and interest in and to all of his property, real, personal, and mixed, of every nature whatsoever, wherever the same may be located, not exempt from execution.

Findings of fact, conclusions of law, judgment, and orders in accordance with the views herein expressed may be prepared and submitted for signature.

☞See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes