SAM B. IRVINE ET AL. v. P. H. GRADY.

No. 7446.

1. **Notice to Agent as Affecting His Principal.**—As a general rule, notice to the agent is notice to the principal. This, however, does not apply to a case where an agent authorized to purchase a stock of cattle began negotia- tions which were broken off, and the principal subsequently, and negotiating in person, made the purchase. In the negotiations between the agent and the seller the latter made material statements touching the subject of the sale. In such case the principal was not charged with notice of the statements made to the agent.

2. **Irrelevant Testimony to Value.**—Suit upon note given in consid- eration of purchase of an interest in a stock of cattle. Defense, fraudulent statements by seller as to number in said stock. It was irrelevant to admit tes- timony to a sale of a like interest in same stock six months later.

**3. Fraudulent Representations.**—While it would be an answer to a defense of fraudulent representations as to the number of cattle sold to the defendant, whose note for such purchase is sued upon, that the plaintiff in negotiating the sale with an agent had refused to guarantee the estimated number, and such refusal had been communicated to the purchaser, still if subsequently the plaintiff did guarantee the number and the purchase was made upon the strength of such guarantee, then such facts would be a defense.

Appeal from Taylor.    Tried below before Hon. T. H. Conner.

*Sayles & Sayles*, for appellants.—1.  The material issue in this case being whether or not the appellant Irvine had actual knowledge that Grady did not claim to know the number of cattle there were in the stock at or before the time the sale was made, and that his representations as to numbers was a mere matter of opinion, with no superior means of information, the court erred in its general charge in imputing to Irvine information acquired by his agent in another transaction, which was never completed, nor any benefit therefrom ever acquired by Irvine, and which knowledge or information so acquired by said agent was never communicated to Irvine.

2.  The principal is bound by the acts, knowledge, and representations of the agent, so far as they form a part of the res gestæ, and no farther. Greenl. on Evi., sec. 113; Story on Ag., 8 ed., sec. 137; Railway v. Ragsdale, 67 Texas, 27; Labbe v. Corbett, 69 Texas, 503; Anderson v. Railway, 54 N. Y., 334; Bank v. Aymar, 3 Hill, 262; Hubbard v. Elmer, 7 Wend., 446.

*M. A. Spoonts* and *K. K. Leggett*, also for appellants.—1.  To bind the principal by declarations made to the agent, it must be in the very transaction in which the agency is created and in which the agent is authorized to act; and statements made to a limited agent in one transaction can not be used against the principal in another.

2.  The fact that the witness M. O. Lynn, in March and April, 1886, bought a half-interest in the C cattle from George P. Sanders for $11,500 could in no way affect the transaction between Irvine and Grady, and this testimony should not have been admitted, and was calculated to prejudice Irvine before the jury.

*John Bowyer*, for appellee.—1.  The court did not err in giving special charge complained of.  The charge as given was authorized and sanctioned by the pleadings in the case, and succinctly stated the law applicable and pertinent to the issue between the parties, the only issue being fraud vel non.  There was no question under the pleadings and issues between the parties as to the reason why the note was made nonnegotiable.  Banking

Co. v. Stone, 49 Texas, 15, 16; Bruner Bros. v. Strong, 61 Texas, 558; Jackson v. Stockbridge, 29 Texas, 395; Wooters v. Railway, 54 Texas, 291; Bigham v. Bigham, 57 Texas, 238; Belcher v. Mulhall, 57 Texas, 20; Kerr on Fraud and Mis., 75.

2. If a representation be made by one contracting party to another in reference to a matter affecting the contract, and the person to whom it is made be informed that the other will not be bound by such representation, then if it proves untrue, it is not such misrepresentation as amounts to fraud that will invalidate a contract; for such representation can not be fraudulent if believed to be true, for the party to whom it is made has no right to rely upon it, when the other informs him that he does not intend to be bound by it. Bruner Bros. v. Strong, 61 Texas, 558.

3. The representation must have been relied upon; and if a person seeks information from other sources for the purpose of verifying such representation, it is strong evidence that he did not rely upon the statements; and in determining whether or not such representations were relied upon, we must consider them with reference to the subject matter and the relative knowledge of both parties. Add. on Torts, sec. 1218; Kerr on Fraud and Mis., 77, 78.

GAINES, Associate Justice.—This is an appeal from a judgment rendered in favor of P. H. Grady against Sam B. Irvine and W. E. Rayner, in a suit by the former to recover of the latter the amount of a promissory note made by Irvine as principal and Rayner as surety, and to foreclose a mortgage upon cattle, executed by Irvine to secure its payment.

The note was given for a part of the purchase money of a half-interest in a stock of cattle sold by Grady to Irvine. The defense was, that the note was procured by fraud, in this: That at and before the time of the sale of the cattle Grady represented to Irvine that there were 3000 head of cattle in the stock (which was running at large upon the range); that Irvine was ignorant of the number, and relied upon the representation of Grady, and was induced thereby to make the purchase; and that in point of fact there were less than 2000 head of cattle in the stock sold.

Upon the trial one Moore testified, that a short time before the sale Irvine agreed to give him $100 to make the trade with Grady; that he saw Grady, who stated his price, but also stated that he did not know how many cattle there were, and would not "guarantee" that there were 3000; that he, witness, thereupon abandoned the negotiation, but told Irvine what Grady had said.

Irvine testified, that before he made the purchase, Moore came to him and told him he thought he could make the trade for him; that he told him he would give him $50 to do so, but that he heard nothing more about the matter from Moore, and supposed that he had dropped the at-

tempt to buy. He expressly denied in his testimony that Moore told him that Grady said that he did not know the number of cattle, and that he would not "guarantee" any number. Grady also testified that he made the statement to Moore.

The testimony of these witnesses as to what Grady said to Moore was objected to by defendants, upon the ground that the knowledge of Moore could not be imputed to Irvine under the peculiar circumstances of the case. The bill of exceptions does not show that at the time the testimony was admitted the plaintiff offered to prove that the statement of Grady to Moore was communicated by the latter to Irvine. But since it appears from the statement of facts that Moore subsequently testified that he told Irvine what Grady had said to him, it follows that if there was error in the court's ruling, it was cured by the subsequent connecting testimony. There being evidence tending to show that Grady's remarks were communicated to Moore, they were properly admitted, although Irvine denied in his testimony that such communication had been made.

Therefore the question whether, under the peculiar facts of the case, the knowledge of Moore ought to be imputed to Irvine is not raised by the assignment of error upon the admission of the testimony. It is, however, presented by an assignment of error upon the charge of the court. The instruction complained of is as follows:

"The material issue in this case being whether or not the appellant Irvine had actual knowledge that Grady did not claim to know the number of cattle there were in the stock at or before the time the sale was made, and that his representation as to numbers was a mere matter of opinion, with no superior means of information, the court erred in its general charge in imputing to Irvine information acquired by his agent in another transaction, which was never completed, nor any benefit therefrom ever acquired by Irvine, and which knowledge or information so acquired by said agent was never communicated to Irvine."

Whether the legal proposition involved in this charge be correct or not, is a question we have found it difficult to determine. As a general rule, it is universally recognized that notice to the agent is notice to the principal. Upon the proposition, that knowledge which comes to an agent during the course of his employment while effecting or assisting in the consummation of a transaction for his principal, is imputed to his principal in any suit in which that transaction may be involved, there is no conflict of authority. But whether the principal will be affected with notice of a fact which has come to the knowledge of his agent in the course of some other business previous to his employment by his principal, is a question upon which the authorities do not agree. That question, however, does not concern us here.

The peculiarity of the present case is, that while Moore acquired his

knowledge during the course of his employment as Irvine's agent, his agency was concluded before the negotiation was undertaken which resulted in the sale of the cattle. After his agency was abandoned and his connection with the business had ceased, the negotiation was resumed through another channel, and conducted to a consummation without any assistance or participation whatever on his part. A difficulty we have encountered in the attempt to determine whether the rule of imputed knowledge should apply in such a case, grows out of the fact that the authorities are not in accord as to the principle upon which the doctrine rests. By some it is held, that the rule rests upon the principle of the legal identity of the principal and agent. Boursot v. Savage, 2 L. R. Eq., 134. By others, it is placed upon the ground, that when a principal has consummated a transaction in whole or in part through an agent, it is contrary to equity and good conscience that he should be permitted to avail himself of the benefits of his agent's participation without becoming responsible as well for his agent's knowledge as for his agent's act. Le Neve v. Le Neve, 2 Lead. Cases Eq., 4 Am. ed., 109, and Am. note 179.

The doctrine of the identity of the principal and agent, as applied to the mere question of imputed notice, seems technical and arbitrary, and if broadly applied would extend the rule so as to embrace cases in which its operation would be manifestly unjust. The latter, in our opinion, is the more reasonable and equitable foundation of the rule, and gives it a more salutary operation. Such being, in our opinion, the proper ground upon which the rule should be placed, we think the knowledge of Moore should not be imputed to Irvine. Moore did not consummate the transaction as finally concluded; nor in effecting it did Irvine in any manner avail himself of Moore's assistance or receive the benefit of any act done by him.

Another reason that is sometimes given for the doctrine that notice to agent is notice to the principal.is, that it is the duty of the agent to communicate his knowledge to the principal, and he is therefore " irresistibly presumed" to have so communicated it. Boursot v. Savage, supra. This would seem rather a deduction from the doctrine, that it is inequitable for the principal to avail himself of the agent's acts without being held to know what the agent knows, rather than an independent foundation for the rule of constructive notice. But however that may be, our ruling upon the question before us should be the same. If Moore had agreed upon a sale with Grady, then he should have communicated to Irvine what Grady told him before agreement was carried into effect. But when he saw that he could not succeed in what he had undertaken to accomplish, and that nothing was to come of his effort, the contract between him and Irvine ceased; the transaction remained as if nothing had been done, and he was not bound to communicate to Irvine what had occurred

between him and Grady. We conclude, therefore, the court erred in giving the instruction under consideration.

The sale from Grady to Irvine took place in December, 1886; and the price for Grady's half-interest, including also an interest in some horses and other property, and in connection with the ranch, and worth about $500, was $11,000. The plaintiff offered to prove by one Lynn, that in March or April, 1886, he (witness) bought a half-interest in the stock upon a credit for the sum of $11,500. The testimony was objected to by defendants, but was admitted by the court. We think the court erred in its ruling. The testimony was irrelevant, and was calculated to mislead the jury, to the prejudice of appellants. The issues were, (1) did the plaintiff represent that there were 3000 head of cattle in the stock, and if so, was that representation false? and (2) was Irvine induced to buy by that representation, and did he rely upon it when he concluded the trans- action? Testimony as to what some third person agreed to pay for a half-interest in the cattle some three months after Irvine bought, was not relevant to either of these issues. The value of the cattle at the time of the sale may be a circumstance tending to throw light upon the transac- tion, but the testimony under consideration was not competent to prove that value.

The court did not err in giving the special charge complained of in appellants' first and second assignments of error. Neither was there error in giving the paragraph in the general charge which is complained of in the eleventh assignment.

We are also of the opinion that the court did not err in refusing to give the charge number 1 asked by appellants. The propositions of law involved in the charge are correct, but the same instructions were substan- tially given in the general charge. In the general charge, however, the jury were told, that if at the time of the consummation of the sale Irvine was informed that Grady did not know the number of cattle, and would not warrant any number, and that Irvine completed the trade with a knowledge of that fact, they should find for plaintiff. We think this was correct. If such express statement was made to him by Grady at the time the sale was concluded, we do not see how he was misled. There was testimony to show that such a statement was made by Grady when the bill of sale was executed, while there was testimony to show the con- trary. In view of another trial, however, we will say, that if the jury should find that Grady told Moore he did not know the number of the cattle, and would not warrant any number, and that Moore communi- cated this fact to Irvine, this should not necessarily preclude Irvine's de- fense; and they still might find for defendants, provided they should be- lieve that in the subsequent negotiations Grady did represent that there were 3000 head of the cattle, and did fraudulently induce Irvine to be- lieve that he knew that there were in fact that number.

For the errors pointed out, the judgment is reversed and the cause re-. manded.

*Reversed and remanded.*

Delivered June 3, 1892.

Motion for rehearing refused.