BOYNTON v. GUARANTY STATE BANK OF LONGVIEW et al. (No. 2436.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 10, 1921. Rehearing Denied Dec. 8, 1921.)

1. Appeal and error ⬤⇒218(2)—Sufficiency of question to submit issue to jury not considered, in absence of objection to question.

Whether the question on which the case was submitted to the jury properly submitted the issue in the case will not be considered, where there was no objection to the question.

2. Principal and agent ⬤⇒177(2)—Purchaser's agent's understanding as to terms of contract made by purchaser himself not imputable to purchaser.

Purchaser's agent was authorized merely to inspect the property and to make a report of his investigation to purchaser. Purchaser did not authorize agent to purchase the property, or negotiate for its purchase, or fix the terms of purchase, or consummate a written or verbal agreement of any kind with vendors. Purchaser himself, and not the agent, made the contract with vendors. *Held*, the agent's understanding as to what the terms of the contract were was not imputable to purchaser in action involving question as to whether the written contract expressed the real agreement of the parties.

Appeal from District Court, Gregg County; Chas L. Brochfield, Judge.

Action by H. A. Clark and another against the Guaranty State Bank of Longview and A. L. Boynton. Judgment for plaintiffs, and last-named defendant appeals. Reversed and remanded.

Appellant and the appellees H. A. Clark and E. A. Stone signed a written contract as follows:

"The State of Texas, Gregg County.

"Know all men by these presents: That for the consideration hereinafter set forth, H. A. Clark and E. A. Stone of Rusk county, Texas, hereby bind themselves and each of them to deliver by a deed of conveyance fully covering the title to 1,000 acres of pine timber and 743 acres of all timber, situated about six miles south of Hallsville, in Harrison county, Texas, the former on the land of Ben Waldron and the latter on the Julia Gishler lands, also one sawmill, edger and trimmer, boiler and engine and all appurtenances thereto, together with 12 mules and 6 wagons and harness, in fact everything now used and connected with said sawmill outfit complete as it is now located and situated on the Waldron tract aforesaid and now owned and operated by Hopkins, Utzman and Utzman, to A. L. Boynton of San Augustine county, Texas.

"That the parties first named agree to forthwith deliver to the said Boynton abstracts covering said title, the same showing a good and merchantable title, and upon delivery of said abstracts Boynton is to have ten days in which to examine same, and in event same does not show a good and merchantable title, first parties are to have a reasonable time, not to exceed thirty days, in which to perfect same.

"As the consideration for the full and complete transfer aforesaid, the same showing a good and merchantable title, including all lumber and logs on said millyard, the said Boynton agrees to pay the first parties the sum of $71,000 as follows: One-half, or $35,000, to be paid upon acceptance and delivery of conveyance showing a good and merchantable title, and the remaining one-half to be divided into two equal payments, evidenced by the two notes of the said Boynton to first parties, due and payable six and twelve months, respectively, after date, bearing 8 per cent. interest from date and payable at First State Bank, Henderson, Texas, on or before their due dates, a failure to pay first note at option of holder matures both of said notes, the same to be secured by a vendor's lien on the property conveyed.

"As an evidence of good faith the said A. L. Boynton is depositing with the Guaranty State Bank of Longview, Texas, the sum of $5,000.00, that he will carry out said contract; in event of his failure the same is to be delivered to the parties first named, otherwise it is to be accepted as a part of the cash consideration herein.

"There will be five years allowed from January 1, 1920, in which to remove the pine timber from the 1,000-acre tract, and three years from January 1, 1920, in which to remove all timber from the Gishler tract and an additional year in which to remove any mill that may be placed thereon.

"It is further agreed as a part of the consideration herein that if said transfer above is consummated, that first parties will deliver to the said Boynton all options and rights they have in any other timber, adjoining and adjacent to the above-described tracts, save and except the Bivins timber.

"Witness our hands this the 11th day of March, 1920."

And appellees Clark and Stone later brought this suit against the Guaranty State Bank and appellant to recover the earnest money, praying for judgment against the bank, a stakeholder, for the sum of money, and "that the plaintiffs have judgment that the defendant A. L. Boynton has no interest in the said deposit." The petition alleged the terms of the contract, the performance of its terms by the plaintiffs, and the failure and refusal of the defendant A. L. Boynton to carry out and perform his part of the contract. The petition also alleges that the mention in the written contract of "1,000 acres of pine timber" was a mutual mistake in expressing the terms of the real agreement made in reducing it to writing, and that the true agreement made by the parties was that Clark and Stone were to sell and convey, and A. L. Boynton was to purchase and pay for, all the pine timber, be it little or much, that was at the time standing on a 1,000-acre tract of land known as the "Ben Waldron

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

land," "located about six miles south of Hallsville in Harrison county, Tex." The defendant bank answered, admitting the deposit of the money with it as stakeholder, and tendered it in court, praying the court to declare and decree it to the real owner. The defendant Boynton answered by: (1) General denial; and (2) specially averring that the written contract truly expressed and stated the terms of the agreement, and that there was no mutual mistake in reducing any of its terms to writing; and (3) pleaded false and fraudulent representation that there were 1,600 acres of land "in the Ben Waldron tract of land," and that there was 1,000 acres of pine timber or pine trees on said tract, when in fact the Ben Waldron tract contained only 1,000 acres of land, of which about 300 acres or more were in cultivation; and (4) a shortage of about 400 acres in pine timber, which deficit was not contemplated at the time of the contract. The plaintiffs filed a supplemental petition in reply to the defendant's answer. The court submitted the case to the jury on the single question of:

"Did A. L. Boynton understand that he was buying all of the pine timber on the 1,000-acre tract of land in the Ben Waldron survey, or did A. L. Boynton understand that he was buying 100 acres of pine timber on the Ben Waldron survey?"

And the court gave a special charge at the appellees' request as follows.

"You are instructed that the witness McConico was the agent of the defendant Boynton, and if you find from the evidence that the said McConico understood that the plaintiffs were conveying to A. L. Boynton all of the pine timber on the 1,000-acre tract of land of Ben Waldron, then in answer to the question propounded to you by the court you will answer that A. L. Boynton understood that he was purchasing all of the pine timber on the 1,000-acre tract of land, and will not answer that the defendant A. L. Boynton understood that he was purchasing 1,000 acres of pine timber on the Waldron land."

The jury made a finding that:

"A. L. Boynton understood through his agent McConico that he was purchasing all of the pine timber on the Ben Waldron tract of land."

The court entered a judgment for the plaintiffs for the money sued for. The evidence was conflicting in the case, and it is not necessary to set it out. It appears that Ben Waldron tract contained, in fact, about 1,100 acres, and about 300 acres of it was in cultivation. Mr. Waldron, the owner of the title, however, in conveying the timber right on the tract, excepted and reserved 100 acres, which was his home. Appellees had an interest, in the undisputed evidence, in the timber on the tract of 1,100, less 100 acres.

Lacy & Bramlette, of Longview, for appellant.
Young & Stichcomb, of Longview, and R. T. Jones, of Henderson, for appellees.

LEVY, J. (after stating the facts as above). [1, 2] The written contract of sale provides for a conveyance by deed by Clark and Stone to A. L. Boynton of, besides other property, "1,000 acres of pine timber," which was, as the writing states, "situated about six miles south of Hallsville in Harrison county, Texas, on the land of Ben Waldron." The sole difference between the parties pertains to the "1,000 acres of pine timber." And in view of the pleading and evidence the conclusion to be reached, in order to determine the differences, was that of whether or not both the parties have made a valid oral agreement free from mistake pertaining to the pine timber, but a mistake in expressing its terms has been made in reducing it to writing. The question as submitted by the court seems to restrict the jury's inquiry to the understanding of A. L. Boynton only as to the terms of the agreement respecting pine timber. Whether, though, the question properly submitted the issue is immaterial for discussion here, since no objection thereto is made on this appeal. The limitation, however, placed on the question by the special charge given and excepted to and made the basis of assignment of error is, in the record, material error this court concludes. The special charge informs the jury that if McConico, "the agent of the defendant A. L. Boynton," "understood" the agreement to be that Clark and Stone were to make conveyance to A. L. Boynton of all the pine timber on the 1,000-acre tract of land of Ben Waldron, then A. L. Boynton would, as a matter of law, be held to have "understood" or agreed to that term of the contract. The legal doctrine involved in this special charge has application when the contract has been negotiated and a final agreement effected through an agent acting in behalf of his principal. Sykes v. Speer, 112 S. W. 422; Harrell v. Brooks, 52 Tex. Civ. App. 334, 113 S. W. 961; Irvine v. Grady, 85 Tex. 120, 19 S. W. 1028. But the legal proposition involved in the special charge has no application, we firmly conclude, to the facts of this case. It is admittedly shown that the written instrument, purporting to be the prior oral agreement, was signed by A. L. Boynton in person, and not by Mr. McConico as agent for A. L. Boynton, And there is no evidence in the record, or pointed out in the briefs, that authorizes a finding of fact that Mr. Boynton never authorized or agreed that Mr. McConico should in behalf of A. L. Boynton buy the property, or negotiate for its purchase, or fix terms of purchase, or consummate a verbal or written agreement of any kind with Clark and Stone for the property or any part of it. Mr. Mc-

Conico, as proven, was engaged by A. L. Boynton to look over the property offered for sale by Clark and Stone, and to make investigation and report to Boynton the result and opinion of the investigation concerning the property. A. L. Boynton and Clark and Stone, each in person, conducted the negotiations and effected whatever agreement was made between them concerning the sale and purchase. of all the property. At the time all the parties went to the law office to have the agreement reduced to writing a real firm "trade" or agreement had been made by Boynton and Clark and Stone, each in person; and this oral agreement, already entered into was the agreement, to be written up. The evidence eliminates any question of agency, and makes pertinent a decision only of whether or not the parties have made a valid oral agreement or contract free from mistake, but a, mistake in expressing its terms has been made in reducing it to writing. Mr. McConico was merely, at most, rendering a gratuitous service or in legal effect merely in the attitude of testifying as a witness to an oral agreement when informing the attorney as to the terms of the agreement previously negotiated and finally agreed upon by the parties in person and without the intervention of any agent. And in any event, in the record, Mr. McConico's "understanding" of the terms of an oral contract, which was previous to its being reduced to writing, negotiated, and consummated entirely by the parties themselves, each in person, would not, as· a matter of law, conclusively bind A. L. Boynton. The "understanding" of Mr. McConico of the contract is merely a matter of evidence to be considered by the jury along with all the evidence as would be the testimony given by any witness present at the trial and hearing the parties finally agree on the particular terms of an oral agreement.

The judgment is reversed, and the cause remanded for another trial.

## On Rehearing.

Appellees insist that the special instruction, for the giving of which the judgment is reversed, was not error, "because the controversy is not about the terms of purchase, but concerns only the acreage of the timber," and "that there is ample evidence to make A. L. Boynton chargeable with his agent McConico's knowledge as to the acreage of timber." The defendant did plead misrepresentation and false representation of the amount of timber on the Waldron tract of 1,000 acres. But the question as submitted by the court, and as it was in the record treated by the parties, could not reasonably be construed as inquiring for the fact of whether or not there was misrepresentation of the amount of timber ·on the land, and consequently a material shortage of the amount thought to be purchased, as a plea in avoidance of the

236 S.W.—33

terms of the contract. The word "understand" in the question asked was used in the sense of "agree," and the effect of the question was to inquire for a fact, i. e., whether there was an agreement between A. L. Boynton and Clark and Stone that A. L. Boynton should have all the pine timber, be it little or much, then on the Waldron tract, or all the pine timber on as much as 1,000 acres out of the Waldron tract. The question was entirely directed to "a term" of the agreement, in order that the court could determine from the jury's answer whether or not both of the parties made a valid oral contract free from mistake pertaining to the pine timber, but a mutual mistake in expressing its terms had been made in reducing it to writing. If the jury had answered that Boynton orally agreed, as contended by appellees, to buy the pine timber, be it little or much, then standing on the 1,000 acres of the Waldron tract, then the court would have construed the written contract as if it were so intended by the written contract in evidence. But if the jury had answered that Boynton made the oral agreement with Clark and Stone, as contended by appellant, to purchase "1,000 acres of pine timber" out of the Waldron tract, then the court would have construed the written contract as being without mutual mistake made in reducing it to writing.

All the evidence agrees that McConico's agency up to the time he went to the attorney's office was that only of an investigator of the property and to make report thereon to his employer. He had no authority to negotiate terms of contract or act in behalf of the appellant in that respect. The evidence is without dispute that the parties themselves finally made and entered into the oral contract at the Mobberly Hotel, and that no part of it was made by the intervention of an agent. McConico was authorized, according to the evidence, "to outline the contract," already theretofore agreed upon by the parties, to an attorney, for the purpose of enabling him to reduce it to writing. The parties went to the attorney's office "to have the contract drawn up," not to make a contract. McConico only outlined the contract, and "gave the attorney an outline of the contract," in order that he might reduce it to writing. If McConico made a· mistake in "outlining the contract" to the attorney as to the clause in question, then probably such a mistake would be imputed to appellant and a reformation would obtain. But if·McConico correctly "outlined" the true agreement of both the parties as to the clause in question, then he made no mistake. And the question is not that of whether or not the attorney made a mistake in writing the words in question, for it does not appear in all the evidence that the attorney did himself make any mistake. There is a difference between the par-

ties themselves as to the true term of agreement about the purchase of "the pine timber," and if a mistake was made as to the agreement, the parties made it.

The special charge, we think, was error, because what McConico "understood" about the true terms of the original contract would not be imputable as a matter of law to Boynton. For McConico had no authority in the evidence to contract or make contracts or to act in behalf of appellant in making a contract; McConico's agency being to the extent only of a timber investigator.

It is concluded by the court that the motion for rehearing should be overruled.