**NORTH TEXAS OIL & REFINING CO., Limited, et al. v. STANDARD TANK CAR CO. (No. 6873.)***

(Court of Civil Appeals of Texas. San Antonio. Jan. 31, 1923. On Motion for Rehearing March 21, 1923.)

1. **Bailment �désignation30—Petition on contract for lease of personal property not subject to general demurrer.**

A petition in an action on a contract of lease of tank line cars, which alleged the terms of such lease, is not subject to general demurrer for failure to allege the terms of another contract referred to, and made a part of the lease sued upon.

2. **Principal and agent ⨠124(2)—Authority of agent to bind principal question for jury.**

In an action on a contract of lease of tank line oil cars, whether plaintiff's agent had authority to bind plaintiff to an agreement that shareholders of defendant, a common-law trust, and as such liable as partners, should be exempt from individual liability on the contract, and that the contract should embrace stipulations to that effect *held* for the jury.

3. **Reformation of instruments ⨠19(2)—Equity will supply stipulation omitted from contract by mutual mistake.**

If through mutual mistake of parties to a contract for lease of personal property the intention of the lessor's authorized agent and of the officers of lessee, a common-law trust, to stipulate that the members of such trust should not be individually liable on the contract was not expressed in the contract, such intention should be given effect in a court of equity upon appropriate pleadings and proof, even though lessor's agent failed to apprise lessor of the limitation.

4. **Principal and agent ⨠124(2)—Whether agent made settlement, and whether he had authority to make settlement questions for jury.**

In an action on a contract for the lease of tank line oil cars, evidence *held* to make it a question for the jury whether the lessor's agent had express, implied, or apparent authority to make a binding settlement of the controversy, and whether he made an agreement for such settlement.

5. **Appeal and error ⨠757(2)—Statement in appellants' brief should show substance of pleas of abatement, sustaining of which is assigned as error.**

Objection on appeal that pleas in abatement interposed by defendants impleaded at the instance of appellants were improperly sustained are not sufficiently presented where the pleas in abatement in question are not set out in the statement in appellants' brief under the appropriate proposition in substance or otherwise.

6. **Pleading ⨠149—Cross-action impleading other defendants must have all requisites of original petition.**

A cross-action must show all the facts and have all the requisites of an original petition necessary to recovery as in an original action, and must be equally proof against demurrer, and where defendants, members of a common-law trust, by cross-action impleaded other members on general allegations that, if defendants were liable as partners, the parties impleaded were also liable, the allegations were insufficient on demurrer.

### On Motion for Rehearing.

7. **Estoppel ⨠92(2) — Where lessor fully complies with contract until abrogation at instance of lessee latter is estopped to deny validity.**

Where a contract for the lease of tank line oil cars provided that such lease was subject to the right of the owners from whom the lessor had leased to take possession of said cars as and when by said lease provided, but the lessor had fully complied with the obligations of his contract until the lessee abrogated the agreement, the lessee, having received all the benefits accruing to it under such contract, is estopped to deny its validity, and in an action by the lessor cannot urge by special exception to the petition the failure of the petition to set out the provisions of the lease referred to in the contract between plaintiff and defendant.

8. **Evidence ⨠457—Parol evidence admissible to explain ambiguous terms "Ltd.," "company organized under declaration of trust."**

The abbreviation "Ltd." and the phrase "a company organized under a declaration of trust" as used in the contract to describe the lessee of personal property have no particular meaning, and unexplained have no other direct effect than to put the parties upon inquiry to ascertain what particular meaning was intended, but as used in the contract in question they interpolated obvious ambiguities, and parol testimony was admissible to explain and interpret such terms.

9. **Reformation of instruments ⨠44—Parol evidence rule not applicable to prevent reformation of ambiguous contract.**

The rule against admitting parol testimony to vary or contradict terms of a written agreement and the rule that antecedent parol agreements are presumed to have been merged into a subsequent written agreement apply only where the terms of the written instrument are plain and unambiguous and do not prohibit reformation of a contract to express the true

intent of the parties, where by mutual mistake, accident or fraud the contract has failed to express such intention.

**10. Reformation of instruments ⓒ⇒19(2)—Mutual mistake will warrant reformation in equity.**

In an action on a contract for the lease of personal property, if the parties agreed and intended at the time of its execution to insert therein a stipulation exempting members of a common-law trust, a party to the agreement, from individual liability which it was believed was an incident to membership in such trust, but the expressions used in the contract did not in fact operate to exempt such members, the failure to express such stipulation was a mutual mistake, and equity will reform the instrument to make it speak the true intention of the parties.

**11. Reformation of instruments ⓒ⇒19(1)—Mutual mistake creating or releasing liability or lien ground for reformation.**

Where a mutual mistake operates to relieve or create personal liability of one or more of the parties or to release or create a lien, equity will reform the contract so that it will effectuate the real intention.

**12. Corporations ⓒ⇒383, 399(1)—Corporation can act only through its agents, and agent's actual authority includes powers necessary to perform his agency.**

A corporation can act only through its agents, and every agency carries with it or includes as an incident all the powers which are necessary and proper or usual as means to effectuate the purpose for which it is created.

**13. Corporations ⓒ⇒428(1)—Knowledge of agent as to purpose of ambiguous language in contract imputed to principal.**

It is an agent's duty to fully advise his principal of all matters within his knowledge affecting a contract negotiated by him, and whether or not he communicated the true facts to his principal he is presumed to have done so, and the corporation is bound by his knowledge as to the purpose or meaning of ambiguous language used in the contract where it executed the same in the form as presented by the agent.

**14. Corporations ⓒ⇒433(2)—Apparent authority of agent and ratification of agent's acts by corporation held for jury.**

Whether an agent for the purposes of making final settlement of disputed matters was within the apparent scope of his authority in making settlement agreement and whether his acts were ratified by his corporation under the evidence were questions for the jury.

Appeal from Seventy-Third Judicial District Court, Bexar County; Robt. W. B. Terrell, Judge.

Action by the Standard Tank Car Company against the North Texas Oil & Refining Company, Limited, and others. Judgment for plaintiff and defendants appeal. Reversed and remanded.

Hicks, Hicks, Dickson & Bobbitt, Wurzbach & Mueller, Hertzberg, Kercheville & Thomson, and Mauermann & Hair, all of San Antonio, for appellants.

Clamp, Searcy & Groesbeeck, of San Antonio, for appellee.

SMITH, J. The Standard Tank Car Company, a corporation domiciled at Sharon, in the state of Pennsylvania, controls a line of tank cars which it leases to others, and the North Texas Oil & Refining Company, an unincorporated association of persons operating under a trust agreement, and having offices at Greenville and San Antonio, Tex., was engaged in refining and transporting petroleum products. On February 9, 1920, the two companies entered into a written contract by which the car company subleased to the oil company 50 tank cars for a term ending March 31, 1922, at the rate of $85 a month per car. In October, 1920, the oil company telegraphed the car company that, on account of temporary suspension of its operations, it requested the latter to take the cars back, and asked for a statement of the account. The cars were taken back, and statement was rendered, but the parties finally disagreed as to the amount involved and the car company brought this suit against the individual shareholders in the oil concern, whom it alleged to be partners doing business under the trade-name of the oil and refining company. Upon a trial the court directed a verdict in favor of the car company against F. M. Newton, L. M. Morehead, M. Riley, Richard Blumel, Ed Haag, E. Y. White, W. M. Morgan, and R. C. Woodword, as partners, and the oil and refining company, jointly and severally, for $13,150.02. Upon the verdict returned as directed, the court rendered judgment as indicated in the verdict, and further in favor of defendants White, Morgan, Woodward, Haag, and Blumel, over against defendants Morehead and Newton for the same amount. All the defendants have appealed. The primary question is whether or not there was any material evidence adduced upon any material issue in controversy, although in disposing of the appeal other questions must be considered and decided. The facts need not be stated except as it is found to be necessary to the particular matters discussed.

[1] It appears that the Standard Tank Car Company was itself a lessee of the cars, and the contract upon which the suit is based contained a stipulation that the rights obtained thereunder by the sublessee were subject to "the terms, provisions and covenants of the lease of said cars from the Logan Trust Company of Philadelphia, trustee, or the Union Trust Company of Pittsburg, trustee, as the case may be, to the party of the first part (the tank car company) and to the right of

---

ⓒ⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

said trustee to demand, receive, and take possession of said cars as and when by said lease provided." The terms of the inner contract referred to in the contract sued on were not set out in the latter, and in basing its suit upon the present contract the car company did not in its petition set out those terms, or any of them, and made no reference to them. In this state of the pleadings appellants, as defendants below, urged a general demurrer, as well as a special exception, to plaintiff's petition, upon the ground that neither the inner contract nor any of its terms were set out. Complaint is made here of the action of the court below in overruling the general and special exceptions. Since the petition undoubtedly set out a cause of action regardless of the omission complained of, there was no error in overruling the general demurrer. But we think, upon the demand made through the special exception, the plaintiffs were required to produce and set up the concealed contract, which, because of the quoted provision in the contract sued on, was in effect made a part of the latter, and the two together constituted the whole agreement. The rights, liabilities, and obligations of the parties were made subject to the concealed contract, and in a suit to enforce the terms of the final agreement the defendants were entitled to know the full terms, since the provisions of both contracts, thus made interdependent, must be construed together in order to ascertain the full obligations and remedies of both parties. It may be that the production of the concealed contract would have disclosed that by its terms the subsequent contract could have been terminated, and the cars withdrawn from the lessee's use, at any time the officials of the Logan or Union Trust Companies, or either of them, elected, notwithstanding the definite term fixed in the final contract; or it may be that by the express provisions of the concealed agreement the Standard Tank Car Company's right to use or let the cars terminated at a definite date during the tenure of the lease fixed in the final contract, and at a time when the lessor would not be entitled to collect the very rentals here sued for. Instances might be multiplied of possible provisions in the concealed contract by which the rights of appellants under the terms of the present contract would be impaired or destroyed, and, since appellee demands strict performance by appellants, the latter are within their rights in calling for the whole of the instrument by which they were bound. The second assignment of error, raising this question, must be sustained, but the first, complaining of the overruling of appellants' general demurrer, will be overruled.

[2] The negotiations which culminated in the execution of the contract sued upon were initiated by correspondence between the two parties, in pursuance of which the tank car company sent its representative, one Albrecht, to San Antonio to continue the negotiations with the officials of the oil company. Albrecht worked out the details of the transaction with the oil company officials, agreed on those details, and prepared the final contract embracing them. The contract thus prepared by Albrecht was then executed by both principals, who proceeded with the performance of their respective rights and remedies thereunder. The testimony raises the issue as to whether or not Albrecht, at the time he prepared the contract, and of its execution by the officials of the oil company, was advised of the facts, and acquiesced therein, that the latter was not a corporation, but was a so-called common-law trust, whose shareholders were under the terms of the trust agreement exempt from liability for the acts and obligations of the association, and agreed to such limitations of liability, and further agreed that the contract in question did and would embrace stipulations to such effect. We repeat, there was ample testimony upon the trial raising these issues of fact. But appellee seeks to eliminate these issues from the suit by the contention that Albrecht was without authority as its agent to bind it in the matters involved in those issues, either by affirmative acts, representations, or conduct, or by acquiring notice of the nonliability of the shareholders of the oil company.

[3] We think, however, that the question of Albrecht's agency or apparent authority was one purely of fact, to be determined by the jury from all the circumstances and facts in evidence, and should have been submitted to the jury along with the other issues we have mentioned. He was delegated by his principal to work out in its behalf details of the contract with the oil company, and did so. He incorporated into the contract all these details, and all the provisions agreed upon between him and the other party thereto, except the provision excluding the personal liability of the oil company's stockholders which they claim was intended to be placed therein. According to testimony, he procured the oil company to execute it, and delivered it to his principal, who adopted it, acquiesced in its expressed conditions, performed thereunder, accepted the benefits accruing to it therefrom, and now seeks to enforce specific performance thereof. If these facts are found by the jury to be true, then they force the conclusion that Albrecht was acting within the apparent scope of his authority, and his principal will be bound thereby. If in his negotiations with them, and if acting with apparent authority, he agreed with appellants that his company would look to the assets of the oil company, and not to the individual shareholders, and that the contract should so provide, then the principal is estopped to deny his authority to so bind them, and notice to him of the re-

strictions against personal liability was notice thereof to his principal. So, also, if it was the intention of Albrecht, the authorized agent, and of the oil company's officials, to contract against the personal liability, such intention should be given effect in a court of equity, upon appropriate pleadings and proof, and, if, through the mutual mistake of the parties, acting through their authorized agent and officials respectively, the limitation is omitted from he contract as executed, or is imperfectly expressed therein (Farley v. Deslonde, 69 Tex. 458, 6 S. W. 786), then a court of equity will supply the omission upon appropriate pleadings and proof, even though the agent fails in his duty to apprise his principal of this intention, for notice acquired by an agent acting within his express, implied, or apparent authority is, of course, notice to his principal. Mechem on Agency, § 720 et seq.; Story on Agency, § 740; 21 R. C. L. p. 854; Irvine v. Grady, 85 Tex. 120, 19 S. W. 1028; Evans v. Supply Co. (Tex. Civ. App.) 182 S. W. 694; Bergman v. Brown (Tex. Civ. App.) 172 S. W. 554; Rodgers v. Wynn (Tex. Civ. App.) 156 S. W. 340.

[4] It appears that, when the oil company requested the car company to take its cars back, and terminate the contract, the latter sent an agent to San Antonio to effect a settlement with the former. This agent, in response to this purpose, called on the officials of the oil company, and reached an agreement with them, but a controversy subsequently arose as to the effect of this settlement, and the question of its purpose and effect is presented here. The car company challenges the authority of its agent to conclude the character of settlement the oil company contends was made. The question raised by the testimony is clearly one of fact, and should have been submitted to the jury, both as to the express, implied, or apparent authority of the agent, and as to the effect and finality of the settlement. If there was a good faith controversy as to the amount of the debt, and the agent, acting with apparent authority, agreed wih appellants to settle for a specific amount, then such agreement of the agent was binding upon his principal. Both issues were raised by the evidence in this case, and both were jury questions.

[5] Some of the defendants impleaded a number of additional parties defendant, and by cross-action sought to have their liabilities adjudicated along with all the defendants. In this cross-action it was simply alleged that if the pleaders "are partners, which they specially deny," then the impleaded defendants "are also partners of these defendants, and are jointly liable therewith upon plaintiff's demand and debt, if any, and these defendants here and now pray that such persons be made additional parties defendant in order that the rights and liabilities of said interested parties may be adjudicated in this cause," and there was prayer for citation, etc. Complaint is made by some of the defendants that pleas in abatement filed by the defendants so impleaded were sustained. The statement in appellants' brief under the proposition based upon this action of the court is not sufficient. The pleas in abatement are not set out in this statement, in substance or otherwise. We are referred to pages 72 to 75 of the transcript for the orders sustaining these pleas, but the orders appearing on these pages do not relate to pleas in abatement, but to certain general and special demurrers, which are shown to have been sustained. If these demurrers were directed at the cross-action referred to and quoted above, we think they were properly sustained.

[6] A cross-action must have all the requisites of a plaintiff's petition, and must show all the facts essential to recovery as in an original action, and must be equally proof against demurrers. In the cross-action here the allegations are entirely too general to warrant any recovery against the parties therein impleaded. If it was meant by appellees to allege that the impleaded parties were shareholders in the trust in controversy, and by reason thereof were partners, and jointly liable with all the other shareholders, and were therefore proper parties, and the full facts showing these relations of all the parties had been alleged, a different question would be presented.

We think this was essentially a jury case. There was a conflict in the testimony upon the material issues raised by the pleadings, and these issues should have been submitted to the jury, to which end the judgment must be reversed, and the cause remanded.

Reversed and remanded.

## On Motion for Rehearing.

[7] We have concluded we were in error in sustaining appellants' second assignment of error, and holding that the court below should have sustained appellants' special exception, and required appellee to set out the provisions of the contract referred to in the contract sued on. Regardless of the binding character of the final contract upon the tank car company, that company had fully complied with the obligations imposed upon it therein until the whole agreement was abrogated at the instance of appellant, who had received all the benefits accruing to it thereunder. This being true, appellant is estopped to deny the validity of the contract as made (6 R. C. L. 690, and authorities there collated), and the second assignment of error will be overruled.

In the contract between the parties, which was prepared by appellee's agent, Albrecht, appellant was described as "North Texas Oil & Refining Co., Ltd.," and as being "a com-

pany organized under a declaration of trust." In preparing the original draft of the contract Albrecht omitted the descriptive abbreviation, "Ltd.," from the name of appellant, and also omitted the supplemental description, "a company organized under a declaration of trust." Appellants' manager, Morehead, with whom Albrecht was carrying on his negotiations, called the latter's attention to these omissions, and explained to him that the concern was a so-called common-law trust; that by the terms of the declaration under which the trust was operated and which was on record in Hunt county, Tex., the shareholders therein were exempt from individual liability for the debts of the concern, and, according to testimony, the parties then agreed that these shareholders were not to be held liable for the performance of this contract or for the debts of the concern, but were to be expressly exempted from such liability, and to that end Albrecht then inserted the descriptive words in the contract with the express understanding that they had and would be given that effect. It was also in evidence that the parties, Albrecht for appellee, and Morehead for appellant, further intended and agreed that the contract should and would contain stipulations expressly exempting the shareholders in the trust from personal or individual liability for the performance of the contract, or for the concern's debts. There was a conflict in the testimony concerning these matters, but the issue was clearly raised, and should have been submitted to the jury, if the matters were material.

[8, 9] Out of the foregoing facts several questions of law arise, and some of them are pressed for more definite disposition here. The abbreviation "Ltd.," and the phrase, "a company organized under a declaration of trust," as used in the contract, have no particular meaning, and, unexplained, have no other direct effect than to put the parties upon inquiry to ascertain what particular meaning was intended by their use. They served here to interpolate obvious ambiguities into the contract, and upon proper pleadings it became the duty of the court to hear testimony and determine the meaning intended by the parties to be given them, and to give effect thereto in enforcing the contract. This course does not contravene the general rules that parol testimony will not be heard to vary or contradict the terms of a written agreement, or that all antecedent parol agreements are presumed to have been merged into such agreements. It is only where the terms of the written instruments are plainly expressed that these rules apply; and the presence of an ambiguous provision in the instrument avoids those rules and subjects the instrument to the alternative rule, under which parol testimony is admissible to explain ambiguities appearing in the contract. Moreover, no contract is so sacred in form as to

prohibit its reformation for the purpose of expressing the true intention of the parties, where it has failed to do so through the mutual mistake of the parties, or through accident, or the fraud of either party. Farley v. Deslonde, 69 Tex. 458, 6 S. W. 786; Kelley v. Ward, 94 Tex. 289, 60 S. W. 311.

[10] Here it is contended that the parties understood and agreed that the interpolated clauses had the effect of exempting the individual shareholders of the trust from personal or individual liability, in accordance with the provisions of the declaration of trust under which the concern was operating. They believed, and acted upon that belief, that this attempted limitation in the declaration was valid, and that the interpolations in the contract would have the effect of carrying the limitation into that instrument so that the exemption would thus be affirmatively expressed therein. If the expressions used did not in fact operate to so exempt the shareholders, then the parties were mutually mistaken as to the legal effect thereof, and, this being true, equity will reform the instrument so that it may speak the true intention of the parties, and exempt the shareholders from personal liability. Moreland v. Atchison, 19 Tex. 309; Ramey v. Allison, 64 Tex. 697; Gammage v. Moore, 42 Tex. 170; Kelley v. Ward, 94 Tex. 289, 60 S. W. 311; Roberts v. Short, 1 Tex. 373. The mistake made by the parties here was more or less natural, particularly in view of the well-established belief heretofore existing in many quarters that shareholders under the so-called common-law trust could in their trust agreements or declaration effectively provide against individual liability for debts contracted in behalf of the trust estate. It is only recently that the courts of Texas have definitely declared that these shareholders are mere partners in such concerns.

[11] Appellee urges that the mistake was upon a collateral matter, which was not essential to the contract, which "is a perfectly good contract irrespective of whether the court lets it remain as written or writes into it the clause contended for by appellants," and that the rule is that in such cases equity will not intercede to correct the mistake. But the omission was not of a "collateral issue." On the contrary, it was of a direct issue, which goes to the very vitals of the contract, and the rule in Texas is that, where the mistake operates to relieve or create personal liability of one or more of the parties, or to release or create a lien, equity will reform the contract so that it will effectuate the real intention. Ramey v. Allison, supra; Kelley v. Ward, supra.

[12] A corporation cannot act directly, of course, but only through its agents. Whatever negotiations appellee had with the oil and refining company were perforce conducted through its agents. In this instance, al-

though the negotiations between the parties were initiated by correspondence between the offices of the respective concerns, they were continued and concluded in behalf of appellee by its agent, Albrecht, whom it sent to San Antonio for that purpose. The only apparent limitation upon his authority in the premises was that he could not actually execute the contract in behalf of his principal, whose approval and execution thereof was necessary to put it in operation. He was delegated by his principal to formulate, and agree with appellants upon, the terms, provisions, and conditions of the contract, and deliver it in its completed form for rejection or approval and execution, by his principal. This was done, and his principal approved and executed the completed agreement in the exact form agreed upon between Albrecht and appellants. We think the facts, if not conclusive, at least raise the issue of whether or not Albrecht had the implied or apparent authority to bind his principal to the agreement exempting the shareholders of the oil and refining company from individual liability. The extent and nature of the apparent authority of an agent is to be gathered from all the facts and circumstances in evidence, and in case of a conflict in the evidence the question is one of fact for the jury. 21 R. C. L. p. 857. Every agency carries with it, or includes in it, as an incident, all the powers which are necessary and proper, or usual, as means to effectuate the purposes for which it is created. Mecham, Ag., § 715; McAlpin v. Cassidy, 17 Tex. 449; Birge-Forbes v. Ry., 53 Tex. Civ. App. 55, 115 S. W. 333.

[13] Here Albrecht had the power to tentatively agree upon the prices, terms of the payments, and other vital conditions provided for in the contract, and we see no reason why this power should not be extended by implication to embrace the agreement exempting, not the appellant company, as such, but the individual shareholders thereof. It is true that this agreement was only tentative, as were the other conditions in the contract, and it is true that it was not fully expressed, but Albrecht knew of its full meaning and purpose, and his principal was charged with the knowledge acquired by Albrecht in the transaction. It was his duty to fully advise his principal of the agreement, and of the matters within his knowledge, and to explain the purpose of the language used in the contract to effectuate the limitation. And, whether or not he did communicate the true facts to his principal, he is presumed to have done so, and the corporation was bound thereby when it executed the contract in the form presented to it by its agent. Mecham, Ag., § 1802 et seq.; Irvine v. Grady, 85 Tex. 123, 19 S. W. 1028; Evans v. Supply Co. (Tex. Civ. App.) 182 S. W. 694; Bergman v. Brown (Tex. Civ. App.) 172 S. W. 554.

[14] Appellee complains of our holding that the question of the authority of its agent, Henderson, to bind the company in the final settlement negotiated between the parties, was one of fact for the jury. We do not deem it necessary to set out the evidence upon this issue, but deem it sufficient to say that that evidence very clearly raises two specific issues of fact: (1) Was Henderson acting within the apparent scope of his authority, considering all the facts and circumstances? and (2) Did the company, knowing the terms of that settlement, subsequently ratify it?

We have gone into the matters here discussed in deference to appellee's insistence that our decision of those matters be more definitely expressed. It appears that judgment was rendered in the court below in favor of one of the defendants, R. Maurer, and as no complaint is made here of that judgment, the judgment will be affirmed as to said Maurer, but in all other respects reversed, and the cause remanded for another trial.

Appellee's motion for rehearing will be overruled.