OPINION
RAY, Justice.
This is an appeal from a post-answer default judgment rendered against the defendant, Doug Watson. The court of appeals reversed the trial court’s denial of a motion for new trial and remanded the cause for trial. 675 S.W.2d 813. We reverse the judgment of the court of appeals and affirm the trial court’s judgment.
After suffering personal injuries, Lester Grissom filed suit against Doug Watson on August 16, 1981, in Ector County. Pursuant to the terms of his insurance policy, Watson turned the case over to his insurance carrier. The insurance carrier retained Louis Sandbote of Dallas to represent Watson in this cause. Watson’s timely filed answer was signed by Sandbote and contained Sandbote’s Dallas address. *326 Accompanying the answer, however, was a transmittal letter drafted on the stationery of an Odessa law firm. This letter contained Sandbote’s signature but did not include his Dallas address. Watson admitted in oral argument that Sandbote had a local Odessa law firm file the answer for him in Ector County.
Discovery proceeded with depositions being taken and on January 18, 1983 the court clerk sent out notices of the docket settings to the attorneys. Although it was the clerk’s usual custom to send notices to the addresses on the pleadings, in this cause the clerk sent the notice to the address on the transmittal letter. This resulted in the Odessa firm receiving the docket notice rather than Sandbote at his Dallas address. The record reflects that the Odessa firm did not notify Sandbote of the May 16, 1983 trial setting. On February 11, 1983 Sandbote withdrew as attorney of record because of problems with the insurance carrier. He informed the insurance carrier of his withdrawal, but not Watson. Moreover, the insurance carrier did not inform Watson of Sandbote’s withdrawal.
On the designated trial date neither Watson nor his insurance carrier appeared in person or through an attorney. Grissom put on evidence and received a $155,000 post-answer default judgment. Neither Watson nor his insurance carrier notified the trial court of any substituted attorney until after judgment was rendered on May 20, 1983. The trial court overruled Watson’s motion for new trial and the court of appeals reversed this judgment.
We agree with the court of appeals that the controversy in this cause regarding Watson’s right to a new trial revolves around whether Watson’s failure to appear was intentional or a result of conscious indifference. Craddock v. Sunshine Bus Lines, Inc., 134 Tex. 388, 133 S.W.2d 124 (1939). Additionally, we agree that the requisites for granting a motion to set aside a trial court’s default judgment also apply to a post-answer default judgment. Ivy v. Carrell, 407 S.W.2d 212 (Tex.1966). But, we disagree that the Craddock requirements were achieved to the point the trial court abused its discretion in denying the motion for new trial. The law is well settled that there are certain prerequisites that must be met in order to set aside a default judgment and obtain a new trial. It is within the discretion of the trial court to decide whether the facts of the case warrant vacation of the default judgment and the granting of a new trial. See Zonker v. Sullivan, 650 S.W.2d 189 (Tex.App.-El Paso 1983, writ ref’d n.r.e.); United Beef Producer’s Inc. v. Lookingbill, 528 S.W.2d 310 (Tex.Civ.App.—Amarillo), writ ref'd n.r.e. per curiam, 532 S.W.2d 958 (Tex.1976).
We focus on whether the trial court was correct in finding an agency relationship between Sandbote and the Odessa law firm. The creation of an agency relationship is guided by the general rule:
“As between parties to the relation, there must be a meeting of the minds in establishing the agency, and the consent of both the principal and the agent is necessary to create the agency, although such consent may be implied rather than expressed. The principal must intend that the agent act for him, the agent must intend to accept the authority and act on it, and the intention of the parties must find expression in either words or conduct between them.”
First National Bank of Mineola v. Farmers & M. State Bank, 417 S.W.2d 317 (Tex.Civ.App.—Tyler, 1967, writ ref’d n.r.e.) (quoting 3 Am.Jur.2d 428, Agency, Sec. 17). Additionally, “[sjince the principal, if he had conducted the transaction for himself, would in all probability have ascertained the facts which came to the knowledge of the agent in making the transaction, he should not be allowed to avail himself of the circumstance that he acted through an agent, and to say that, although the agent was affected with notice, he acted with good faith.” Carter v. Converse, 550 S.W.2d 322, 329 (Tex.Civ.App.—Tyler 1977, writ ref’d n.r.e.). In light of this language and the fact that the Odessa firm filed the *327 answer in Ector County on Sandbote’s behalf, we hold the trial court was correct in finding an agency relationship.
We are not to be understood as saying that in each transaction where one law firm solicits another firm to file an answer that an agency is established to the point that the filing firm is responsible to the requesting firm for all later transactions involving that case. But, in view of the circumstances of this case, the Dallas attorney Sand-bote should have communicated clearly to the court clerk that the Odessa firm was merely performing a ministerial act on his behalf and that he was the attorney to whom all correspondence was to be addressed. Two ways this could have been achieved were by stating such in the transmittal letter or by providing a transmittal letter containing only Sandbote’s name, address and other information.
We also believe the trial court correctly imputed the notice of docket setting from the Odessa firm to Sandbote especially since the notice was acquired in connection with the business transacted for the principal. “As a general rule, it is universally recognized that notice to the agent is notice to the principal.” Irvine v. Grady, 85 Tex. 120, 19 S.W. 1028 (1892).
Next, it is very disturbing that Watson was unrepresented for virtually three months after Sandbote’s withdrawal. Watson trusted the insurance carrier to manage this case and the carrier’s failure to perform such an obligation is intolerable. The carrier hired Sandbote and knew of his withdrawal as Watson’s attorney of record, yet the carrier did not notify Watson of the withdrawal or take any action toward securing new counsel until after the court rendered a default judgment against him.
In Harris v. Lebow, 363 S.W.2d 184 (Tex.Civ.App.—Dallas 1962, writ ref’d n.r.e.) Harris was served with process and he handed the citation and the petition to his insurance company relying on them to file the answer. No answer was filed and a default judgment was rendered. The court of appeals, in affirming the trial court’s denial of a motion for new trial, held that “[a] party who has been duly served with citation to appear and defend a cause asserted against him may not relieve himself of the judgment rendered unless he thoroughly demonstrates that he and his agent were free of negligence or conscious indifference.” Id. at 186. In Harris v. Lebow there was no showing in the record why the carrier did not file an answer. Similarly, in the present cause there is nothing in the record why no new attorney was hired after Sandbote’s withdrawal.
We hold that the trial court did not abuse its discretion in overruling Watson’s motion for new trial. In this cause the failure to appear at trial amounted to intentional or conscious indifference. The judgment of the court of appeals is reversed and the judgment of the trial court is affirmed.